# THE STATE v. SPERITUS, Appellant.

### Division Two, November 21, 1905.

1. **APPEAL: Criminal Case: Affidavit.** Following State v. Smith, 190 Mo. 706, it is held that in a criminal case no affidavit for appeal is necessary.

2. **EVIDENCE: Rebuttal: Character of Witness.** Defendant testified in his own behalf that Vaughn, a witness for the State, had worked for him some time before the alleged offense, and that he found that Vaughn had been stealing from him (defendant) and that he paid him off and told him he had no more work for him. *Held*, that by this testimony the character of Vaughn was assailed, and that the State was not obliged to object to its admission, or move to strike it out, or ask the court to limit its effect and purpose, but it had the right, in rebuttal, to meet it by the countervailing testimony of Vaughn that he had never been arrested for stealing, and by another witness, that Vaughn had a good reputation for honesty.

3. **BURGLARY AND LARCENY: Instructions.** Where the State's second instruction, in a burglary and larceny case, says that if the jury "believe and find from the evidence that defendant unlawfully and forcibly both broke and entered into the store, shop and building . . . as defined in the preceding instruction," and the preceding instruction provided that if "defendant unlawfully and forcibly did break and enter into the store, shop and building . . . . with the intent to steal therein," the second instruction is, by its connection with and reference to the first, rendered free from the objection that it does not require the taking, but the conversion, to have been without the consent of the owner, and that it does not require the breaking and entering to have been done burglariously.

4. ———: ———: **Consent.** An instruction which says that "if defendant took and carried away the property, or any part of it, and that he did so with the intent to fraudulently convert the same to his own use and to permanently deprive the owner thereof without his consent," etc., is in accordance with the law.

5. ———: **Possession of Stolen Property: Presumption: Instruction.** Mere recent possession of stolen property, where the possessor is not the thief, does not raise the presumption that the party received the property, knowing it to have been stolen, but there must be proof that the party knew or had good reason to believe that the property had been stolen at the time he received it. And an instruction which omits this element is properly refused.

6. **ASSISTANT CIRCUIT ATTORNEY OF ST. LOUIS: Powers.** The assistant circuit attorney of St. Louis has the same power as has the circuit attorney, and has, therefore, authority to sign informations.

7. **NEW TRIAL: Newly-Discovered Evidence: Requisites.** In order to support a motion for new trial on the ground of newly-discovered evidence, defendant must show, first, that the evidence first came to his knowledge since the trial; second, that it was not owing to want of due diligence that it did not come sooner; third, that it is so material that it would probably produce a different result if a new trial were granted; fourth, that it is not merely cumulative; fifth, that the object of the evidence is not merely to impeach the character or credit of a witness; and, sixth, the affidavit of the witness himself should be produced or its absence accounted for. And it is held that defendant in this case made such showing, and that the court should have awarded him a new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

REVERSED AND REMANDED.

*Thos. B. Harvey* for appellant; *J. M. Rollins* of counsel.

(1) The court erred in overruling defendant's objection to rebuttal evidence of the State tending to prove the good reputation of witness Vaughn, in the absence of attack upon said reputation by defendant. State v. Cooper, 71 Mo. 436; State v. Thomas, 78 Mo. 327; State v. Patrick, 107 Mo. 147. (2) The instructions were erroneous in the following respects: (a) The second instruction does not require the taking, but the conversion, to have been without the consent of the owner of the property; and, (b) it does not require the breaking and entering to have been done burglariously in order for the stealing of property of any value to constitute grand larceny. State v. Walker, 174 Mo. 518; State v. Rutherford, 152 Mo. 124; State v. Barker, 64 Mo. 282; State v. Brown, 73 Mo. 631; State v. Brinkley, 146 Mo. 37. (3) The court should have given the

instruction requested by the defendant, to the effect that the possession of the stolen property by defendant, raised either the presumption that he had stolen the property, or that he had received it from another. State v. Guild, 149 Mo. 370; State v. Richmond, 186 Mo. 71. (4) The court should have sustained defendant's motion to quash the information on the ground that the assistant circuit attorney was without power under the law to issue it. Secs. 2477, 4959, 4960, R. S. 1899; Laws 1901, p. 48; Laws 1905, p. 51; State v. Kelm, 70 Mo. 515; State v. Kyle, 166 Mo. 287. (5) Defendant should have been granted a new trial because of the discovery of new and material evidence. State v. McKenzie, 177 Mo. 699.

*Herbert S. Hadley,* Attorney-General, and *Rush C. Lake,* Assistant Attorney-General, for the State.

(1) There could have been but one purpose accomplished in granting a new trial based upon newly-discovered evidence, which would have been that the testimony would have tended to impeach the credibility of witness Vaughn if the jury had believed it. State v. Miller, 144 Mo. 26; State v. Bowman, 161 Mo. 88; State v. Neasby, 87 S. W. 468. (2) The court properly refused to give the instruction asked by defendant as to presumption. The law respecting the presumption of stolen property is very different when a defendant is charged with receiving stolen property (State v. Richmond, 186 Mo. 71) from the presumption when the defendant is charged with burglary and larceny, as in the case at bar. State v. Drew, 179 Mo. 315; State v. Belcher, 136 Mo. 137.

BURGESS, P. J.—On the 20th day of April, 1904, there was filed an information in the office of the clerk of the circuit court of the city of St. Louis by W. Scott Hancock, assistant circuit attorney of said city, under

his oath of office, charging the defendant with burg-
lary in the second degree and larceny. Upon trial
had, defendant was convicted of both burglary and lar-
ceny, and his punishment fixed at three years' impris-
onment in the penitentiary for the burglary, and two
years for the larceny. After unavailing motions for
new trial and in arrest of judgment, defendant appeals.

The facts, briefly stated, are that William A. Gro-
lock kept a vehicle and harness establishment at 915
North Broadway, in the city of St. Louis, which was
closed on Saturday evening, January 30, 1904, but upon
the following Monday morning a rear door was found
open, a glass skylight broken, and a milk wagon and
sixteen sets of single harness were missing from the
store.

Reuben Vaughn, a witness for the State, after tes-
tifying that he knew the defendant, proceeded as fol-
lows:

"Well, he—the way it come up, he asked me
whether I had a stable shed at my house to conceal a
wagon, or put a wagon in, and I told him no, I had no
shed at my house that would do for a wagon because I
had no shed at all, and he told me he has got a good
wagon he wants to put in a shed, and he would be will-
ing to pay for it if he knew some one that had a shed,
and I asked him what he would be willing to pay for
some one to keep the wagon for him, thinking he wanted
it kept out of the weather, and he said he wanted to pay
ten dollars to keep it for a month, and I thought that
was a good price, and I told him I thought I could find
a good place to keep the wagon out of the weather, and
I suggested, then, my father's as being a good place to
put the rig, as he had plenty of room out there, and I
told him if he would be willing to pay ten dollars I
would go out and see my father-in-law—see if my fa-
ther-in-law would keep the wagon for ten dollars a
month, because I thought I would get him to keep it
cheaper and keep the balance myself; and he says, 'Go

and see him right away,' and I says to him, 'Where is the rig?' and he says he's got it out on the road between here and East St. Louis, and I told him—I says: 'Is it a stolen rig?' and he says, 'Yes, the rig is stolen, but there ain't no way on earth to get in trouble about it.' And I asked him what kind of a wagon it was, and he said a great big delivery wagon with a top on it, and I told him I didn't know whether he had room for a wagon with a top on it, because he had no wagon with a top on, and he says, 'The top can be taken off;' he says, 'I don't want you to take the top.' He says, 'I will tell you where the rig is, and if you will go out there and get the running-gear of that rig for me I will give you ten dollars to get it and bring it to town and take it out to your father-in-law's, and I will pay him for keeping it,' and I told him, I says, 'How will I get the running-gear to town?' and he says, 'I will give you a monkey wrench and you go out there; there is only four or five bolts you have to take off, and the top will come off,' and I told him all right, and I says, 'I will go out and see my father-in-law,' and he says, 'You can then take your gun and dog and go out like you are hunting and walk up to the rig and look at it and if there ain't nobody around, you can take the bolts off and the top will fall down the hill;' and I told him all right, and I says, 'You will have to give me car fare to go out to my father-in-law's and he gave me ten cents. And I had read an account in one of the St. Louis papers about a week, or maybe two weeks, previous to that, about a rubber-tired rig and horse being stolen over here in St. Louis, and I kind of suspected that might be the rig, and I went back and asked him, 'What about a wagon to bring that home on?' and he told me I could hire a wagon and he would pay me for the hire. I told him, 'Can you give me one of your horses?'—he had three of his own then—and he says, 'No, if I give you one of my horses that will be suspicious right away,' and I says, 'Is that a rubber-tired rig?' and he says,

'No;' and I went to the police headquarters at Belleville and asked them if they had a description of a rig that had been stolen in St. Louis. . . . .''

The testimony of witness Vaughn was corroborated by the testimony of the police officers of both Belleville and St. Louis, in so far as the recovery of the wagon was concerned, and its location in the woods.

The defense was an alibi, in support of which defendant offered evidence which tended to show that from Saturday, January 30th, to Monday, February 1st, he was in Belleville and could not have been in St. Louis, the scene of the burglary. Some witnesses also testified that they overheard a conversation between Vaughn and defendant on February 2, when, instead of defendant telling Vaughn about a wagon, Vaughn was trying to sell defendant, for the sum of ten dollars, a covered wagon which he claimed to have somewhere.

The court gave the following instructions:

''The State of Missouri, by the information in this case which was filed in this court on the 20th day of April, 1904, charges the defendant with the offense of burglary in the second degree and larceny. The defendant pleads not guilty; and upon the question of his guilt or innocence the court instructs you as follows:

''1. If, upon consideration of all the evidence in the case, in the light of the court's instructions, you believe and find from the evidence that at the city of St. Louis and State of Missouri, on or about the 31st day of January, 1904, the defendant, Morris Speritus, unlawfully and forcibly did break and enter into the store, shop and building of W. A. Grolock with the intent to steal therein, and that in said store, shop and building certain goods, wares and personal property of any kind and of some value, however small, were at the time by said W. A. Grolock kept and deposited, you will find the defendant guilty of burglary in the second degree and assess his punishment in the penitentiary for a term of not less than three years.

"Before you can find the defendant guilty of burglary you must find from the evidence that he unlawfully and forcibly both broke and entered into said store, shop and building, but to constitute such breaking no particular amount of force is necessary. It is sufficient if he broke an outside window or skylight of said store, shop and building and then entered thereby or opened a closed outside door of said store, shop and building and then entered thereby.

"2. If you believe and find from the evidence that the defendant, Morris Speritus, unlawfully and forcibly both broke and entered into the store, shop and building of the said W. A. Grolock as defined and explained in the preceding instruction, and that after breaking into and entering the same the defendant, Morris Speritus, took and carried away therefrom the one-horse wagon and sixteen sets of single harness mentioned in the information in this case, or any part of it, and that he did so with the intent to fraudulently convert the same to his own use and to permanently deprive the owner thereof without his consent, and that said one-horse wagon and sixteen sets of single harness were the property of the said W. A. Grolock and were of any value whatever, you will find the defendant guilty of grand larceny also, and assess the punishment at imprisonment in the penitentiary in addition to the punishment for the burglary for a term of not less than two nor more than five years.

"3. The court further instructs you that if you acquit the defendant of burglary, as heretofore defined, you will then consider whether or not he is guilty of grand larceny, in which connection the court instructs you, if you find and believe from the evidence that at the said city of St. Louis, at any time within three years next before the finding of the indictment herein, the defendant, Morris Speritus, unlawfully and fraudulently did steal, take and carry away a one-horse wagon and sixteen sets of single harness from the posses-

sion of W. A. Grolock with the intent to unlawfully and fraudulently convert the same to his own use and permanently deprive the owner thereof without his consent, and that the same was the property of said W. A. Grolock and of the value of thirty dollars or more, you will find the defendant guilty of grand larceny, and assess the punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years.

"4. Under the information and instructions in the cause, you may find the defendant guilty of both offenses, or you may acquit him of both offenses, or you may convict him of burglary and acquit him of the larceny, or you may acquit him of the burglary and convict him of the larceny, according as you may find the facts to be from the evidence.

"5. If you find from the evidence that the property mentioned in the information, to-wit, a one-horse wagon and sixteen sets of single harness, was the property of W. A. Grolock, and that it was stolen in the city of St. Louis, State of Missouri, on or about the 31st day of January, 1904, and that recently thereafter the same or any part of said property was found in the exclusive possession of the defendant, then the defendant is presumed to be guilty of the theft, and the law will further presume that the thief resorted to and made use of all means necessary to gain access to and possession of such stolen property, and the burden is on him to rebut or overcome the presumption to your satisfaction, but not beyond a reasonable doubt. The presumption of guilt arising from the mere naked fact of possession of stolen goods may, in the absence of other corroborating testimony, be rebutted by the evidence that the defendant received the property from another person, or by evidence that the defendant was at a different place than that at which the property was stolen at the time it was stolen, but unless such presumption is so rebutted, or unless such possession is accounted for in a

manner consistent with the innocence of the defendant by the evidence in the case or the circumstances attending such possession, or by the combined weight of one or more of the kinds of evidence just mentioned, then you should find the defendant guilty of stealing the property and also of the burglary.

"6.   The defendant has interposed as a defense what is known in law as an alibi, that is, that even if the offense was committed as charged, he was at the time of the commission thereof at another and different place than that in which such offense was committed, and, therefore, was not and could not have been the person who committed the same.   Now, if the evidence leaves in your minds a reasonable doubt as to his presence at the place where the offense was committed at the time of the commission thereof, you will find him not guilty.

"7.   You are further instructed that the information contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt. The law presumes the defendant to be innocent, and the presumption continues until it has been overcome by evidence which establishes his guilt to your satisfaction and beyond a reasonable doubt; and the burden of proving his guilt rests with the State.   If, however, this presumption has been overcome by the evidence and the guilt of the defendant established to a moral certainty and beyond a reasonable doubt, your duty is to convict. If, upon consideration of all the evidence, you have a reasonable doubt of defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt, and not a mere possibility of his innocence.

"You are further instructed that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony.   In determining such credibility and weight you will take into consider-

ation the character of the witness, his or her manner on
the stand, his or her interest, if any, in the result of the
trial, his or her relation to or feeling towards the de-
fendant or the witness, W. A. Grolock, and the probabil-
ity or improbability of his or her statements, as well as
all the facts and circumstances given in evidence. In
this connection you are further instructed that if you
believe that any witness has knowingly sworn falsely to
any material fact, you are at liberty to reject all or any
portion of such witness's testimony.

"You are further instructed that in considering the
weight of the evidence given by the defendant and his
wife, you will take into consideration the fact that he is
the defendant, testifying in his own behalf, and that she
is his wife, and you may consider their interest in this
case and the marital relation, in determining the cred-
ibility of their testimony.

"8. The court instructs the jury that if they believe
and find from the evidence that the defendant had pos-
session of the wagon alleged to have been stolen, yet,
if they entertain a reasonable doubt under the evidence
as to whether such possession was acquired by the steal-
ing of said wagon, or by receiving it from another
knowing it to have been stolen, the jury will acquit the
defendant of the charge contained in the information.

"9. The court instructs the jury that if they be-
lieve and find from the evidence that the defendant had
possession of the alleged stolen property recently after
the same had been stolen, and that in course of the same
conversation with the witness Vaughn by which the
State attempts to prove defendant's possession of said
property, the defendant gave an account of said posses-
sion, explanatory of how he obtained said possession
otherwise than by stealing the same, then if they be-
lieve such account of said possession they should find
the defendant not guilty of the crime charged against
him in this information now on trial.

191 Sup—3

"10. The court instructs the jury that the defendant is not charged with receiving or having possession of stolen property, knowing that it was stolen, but the, charge for which he is placed upon trial at this time is burglary and larceny; and the court instructs the jury that if you believe and find from the evidence th*t the defendant was guilty of having received the property mentioned in the information after the same was stolen, then you will acquit the defendant of the charge of burglary and larceny, for which he is now on trial."

And the court refused the following instruction asked by defendant:

"The court instructs the jury that where one is found in possession of stolen property, recently after the same has been stolen, such possession raises a presumption that he obtained such possession either by stealing the property or by receiving it, knowing that it has been stolen; and the law raises from such possession either one of said presumptions with equal force and effect."

Before passing upon the merits of the case it becomes necesary to pass upon several preliminary motions, one of which is by the State to dismiss the appeal, and another to strike the case from the docket, both predicated on the ground that the defendant failed and neglected to file any affidavit for appeal in the circuit court. This precise question was carefully considered at the present term of this court in the case of State v. Smith, 190 Mo. 706, in which Judge Fox, speaking for the court, held that in criminal cases no affidavit for appeal is necessary. The decision in that case is decisive of this question.

On the trial, the defendant testified in his own behalf and stated that Vaughn, a witness for the State, was at work for him sometime before the alleged burglary and larceny, and that he found out that Vaughn had been stealing some stuff from him, defendant, and that he paid him off and told him that he had no more

work for him.  In rebuttal, over the objection of defendant, the State was permitted to prove by Vaughn that he had never been arrested for stealing, and, by another witness, that Vaughn had a good reputation for honesty.  There was no ground laid for the introduction of this evidence other than as stated, and defendant claims that its admission was error.  The argument is that defendant's statement that he had discharged Vaughn was not intended as an impeachment of Vaughn for veracity and honesty, but as a reason why he had stopped working for the defendant; that if it was not competent for that purpose, the State's counsel should have objected and moved to strike it out, or had the court limit its effect and purpose, and that it could not be taken as a pretext for bolstering up the State's witness and case by evidence of his good reputation.

While we fully appreciate the plausibility of this argument, we are not impressed with its logic, and for these reasons: Conceding, for sake of the argument, that the testimony was not competent for the purpose of impeaching Vaughn for veracity or honesty, the State was not obliged to object, or move to strike it out, or to ask the court to limit its effect and purpose, but it had a right to do as it did do—meet the charge by countervailing evidence.  If a party to a suit introduces illegal and incompetent evidence, it does not lie in his mouth to say that, because the adverse party did not object to it or move to strike it out, he is, therefore, bound by it and precluded from introducing evidence tending to contradict it.  Moreover, if a party should object to the introduction of evidence reflecting upon his character, or move to strike it out rather than meet it by evidence tending to show it to be untrue, he would, by so doing, run the risk of unfavorable inferences as to his character being drawn by the court or jury.  We recognize the rule that evidence is not admissible to prove the good character of a witness or a party to a suit unless it has in some way been assailed; and in the

case in hand we think Vaughn's character was assailed when it was said he was a thief.

The State's second instruction is criticised upon the grounds that it does not require the taking, but the conversion, to have been without the consent of the owner of the property, and that it does not require the breaking and entering to have been done burglariously in order to constitute the stealing of property of *any value* grand larceny. The State's first instruction provides that if "defendant, Morris Speritus, unlawfully and forcibly did break and enter into the store, shop and building of W. A. Grolock with the *intent to steal* therein," while the second instruction refers to that one and says that if the jury "believe and find from the evidence that the defendant, Morris Speritus, unlawfully and forcibly both broke and entered the store, shop and building of the said W. A. Grolock, as defined and explained in the preceding instruction," thereby making that part of the first instruction referred to, and especially "with intent to steal," a part of the second, and making the latter free from the objection complained of.

A further objection urged against the instruction is that it says that if the defendant took and carried away the property with the intent "to permanently deprive the owner thereof without his consent" it will be larceny. The insistence is that in order to make the taking larceny, it must be without the consent of the owner. In this respect the instruction says that, "if the defendant, Morris Speritus, took and carried away the one-horse wagon and sixteen sets of single harness mentioned in the information in this case, or any part of it, and that he did so with the *intent* to fraudulently convert the same to his own use and to permanently deprive the owner thereof without his consent," etc. It is in accord with the law as announced in State v. Waller, 174 Mo. 518, and authorities therein cited.

The fifth, sixth, ninth and tenth instructions given on behalf of the State are also criticised, but the objec-

tions to them appear to be quite technical, and not such as to justify a reversal of the judgment.

Another contention is that the court should have given the instruction presented by the defendant, to the effect that the possession of the stolen property by defendant raised the presumption that he either had stolen the property or had received it from another, knowing it to have been stolen.

It was held in State v. Guild, 149 Mo. 370, that recent possession of stolen goods is sufficient to raise a presumption of guilt in receiving them with the knowledge that they were stolen, where the possessor is not the thief, and fails to satisfactorily explain how he acquired possession. That case overruled State v. Bulla, 89 Mo. 595, in which it was ruled that no such presumption is to be indulged from the mere recent possession of stolen property. In the recent case of State v. Richmond, 186 Mo. 71, the case of State v. Guild was disaffirmed and the case of State v. Bulla affirmed; so that, in a prosecution for receiving stolen goods, knowing them to be stolen, in order to sustain a conviction therefor, there must be proof that the defendant knew or had good reason to believe that the goods had been stolen at the time he received them, aside from the mere fact that he was found in possession of them recently after they had been stolen. "The very essence of the offense is the receiving, knowing them to have been stolen" (State v. Richmond, supra), which this instruction entirely omits. It was, therefore, properly refused.

The information in this case is assailed upon the ground that it is signed by the assistant circuit attorney of the city of St. Louis, W. Scott Hancock, who, defendant contends, was without authority to sign it, and, therefore, the information was void. He was elected in the fall of 1901 for the term of four years, under the provisions of section 4959, Revised Statutes 1899. Section 4960, Revised Statutes 1899, prescribes his duties

as follows: "It shall be the duty of such assistant to aid, *generally*, in the performance of the same duties as are by law enjoined upon the prosecuting attorney, and he shall be subject to the same fines and penalties for misdemeanor in office or neglect of duty."

Section 4961 provides for the election of one prosecuting attorney and one assistant prosecuting attorney for the city of St. Louis, and section 18 of the act creating the St. Louis Court of Criminal Correction, p. 2545, vol. 2, Revised Statutes 1899, authorizes said assistant prosecuting attorney to issue informations to be lodged in said court.

Section 4970 provides for the appointment of assistant prosecuting attorneys in counties having 75,000 inhabitants, and section 4973 prescribes the duties of such assistants. Subsequently, by section 4991, provision was made for the appointment of a second assistant prosecuting attorney in such counties.

Section 4996 provides for the appointment of assistant prosecuting attorneys in counties having between 50,000 and 75,000 inhabitants.

Section 4944 provides for the election of prosecuting attorneys in various counties, and section 4950 prescribes their duties, saying that "the prosecuting attorneys shall commence all civil and criminal actions in their respective counties," etc.; and section 4959 imposes upon the circuit attorney of the city of St. Louis the same duties as are required of prosecuting attorneys.

In addition to the above provisions for the election or appointment of prosecuting and assistant prosecuting attorneys, section 4955 provides that in event of a disqualification of the prosecuting and assistant prosecuting attorneys, "the court having criminal jurisdiction may appoint some other attorney to prosecute or defend the cause."

Section 4956 authorizes the court to appoint some person to discharge the duties of the office if the prose-

cuting attorney be sick or absent; and the section following provides that the person thus appointed shall possess the same power as the prosecuting attorney.

Defendant contends that the foregoing statutes make ample provision for the election and appointment of prosecuting and assistant prosecuting attorneys throughout the State, and also for the appointment of a substitute by the court in the event of the disqualification of the regular prosecuting attorney, or in the event of his sickness or absence. But inasmuch as the inability of the prosecuting attorney might occur during the vacation of the court in his county, the Legislature in 1885 passed an act, now section 4975, authorizing each prosecuting attorney in this State to appoint one assistant, clothed with the power to discharge the duties of the prosecuting attorney; and section 4977 provides under what circumstances he may discharge said duties. Said act of 1885 has an emergency clause attached, as follows: "The law and the Constitution of this State requiring all information for misdemeanors to be made and filed by the prosecuting attorney, before a trial can be had, and there being no law to provide for the appointment of any person to file said information in case of the sickness or absence of the prosecuting attorney from the county, therefore, an emergency, within the meaning of the Constitution, exists; therefore, this act shall take effect and be in force from and after its passage." [Laws 1885, p. 37.]

It is argued that said act of 1885 is a legislative construction of the law then in force with respect to the election or appointment of assistant prosecuting attorneys and their duties, which is to the effect that assistant prosecuting attorneys were not authorized to prefer informations, and that only such assistants as were provided for by the act of 1885 are clothed with such power. It will be observed that the assistant prosecuting attorneys provided for by this act are only for temporary purposes; that is, to act as such, and file in-

formations in the case of sickness or absence of the prosecuting attorney from the county.

State v. Weeks, 88 Mo. App. 263, holds that assistant prosecuting attorneys may be appointed, but that assistants not appointed under section 4975 cannot sign and prefer informations. This is clear from the reading of the act, which provides that such attorney is only appointed for a special purpose; that is, ''to prosecute and defend the cause'' then about to be tried, in the event of the disqualification of the prosecuting and assistant prosecuting attorneys. No one will contend that an assistant thus appointed has any power other than that expressly conferred upon him by his appointment. That case also holds that the language, ''to aid, generally, in the performance of such other duties pertaining to the office of prosecuting attorney as may be designated by such officer,'' does not authorize the assistant to sign informations. The reason for this announcement is plain, when we read the section of the statutes under which it was made in its entirety. It is as follows: ''It shall be the duty of such assistant prosecuting attorney to attend to all cases of misdemeanor and preliminary examinations in justices' courts throughout his county; to appear before the grand jury of his county, if requested so to do by the prosecuting attorney, for the purpose of assisting and advising said body, and examining witnesses and arranging and preserving their testimony, and to aid, generally, in the performance of such other duties pertaining to the office of prosecuting attorney as may be designated by such officer.'' [Sec. 4973, R. S. 1899.] The court said: ''We construe this to mean that such assistant only has charge of misdemeanor cases in the justices' courts; and for a misdemeanor to be prosecuted in that court he may file an information in his own name. We do not understand the concluding clause of the section authorizing such assistant to 'aid *generally*, in the performance of such other

duties' as may be designated by his principal, to enlarge his specially limited authority in the first clause.''

It is a well-settled rule of statutory construction that, ''where words of a particular description in a statute are followed by *general* words that are not so specified and limited, unless there be a clear manifestation of a contrary purpose, the general words are to .be construed as applicable to persons or things or cases of like kind to those designated by the particular words.'' [2 Lewis' Sutherland Statutory Construction (2 Ed.), sec. 422.] But where the general word stands alone, as in this case, it is to be construed in its broad sense, and, when the statute says it shall be the duty of said assistant to aid, *generally, in the performance* of the same duties as are now enjoined upon the prosecuting attorney, it was intended to invest him with the same power conferred upon the prosecuting .attorney, and to impose upon him the same fines and penalties for misdemeanor in office or neglect of duty.

A final contention is that the court erred in not granting defendant a new trial upon the ground of newly-discovered evidence. In order ·to support a motion of this character, it devolved upon the defendant to show, first, that the evidence first came to his knowledge since the trial; second, that it was not owing to want of due diligence that it did not come sooner; third, that it was so material that it would probably produce a different result if the new trial were granted; fourth, that it was not merely cumulative; fifth, that the object of the testimony was not merely to impeach the character or credit of a witness; sixth, the affidavit of the witness himself should be produced, or its absence accounted for. [State v. McKenzie, 177 Mo. 699.] We think it clear from the affidavits of defendant and of Julius Bischof and Henry Meyer, in support of the motion, to the effect that the principal witness for the State, Reuben Vaughn, has said ''distinctly that in fact Speritus had nothing to do with the wagon alleged to have been stol-

en, but that he, Vaughn, was out hunting and had found the wagon lying in a ditch, and that at some distance therefrom he met several men and called their attention to the wagon, and that thereupon said men stated that they had met with an accident and for that reason had left the wagon in the ditch, and that they authorized him, the said Vaughn, to sell the wagon, which he tried to do by offering said wagon for sale to the defendant, Morris Speritus, and he, Vaughn, said that he and Speritus could not agree upon a price, and he, therefore, failed to sell it to Speritus, and that what he told Speritus about the wagon was all that Speritus knew about it,'' as well also as the statement made to Joseph Friedland that Vaughn, in the early part of February, 1904, in Belleville, Illinois, offered to sell him a wagon, but that Vaughn's description of the wagon did not suit him, all came to defendant's knowledge after the trial, and that it was not owing to want of due diligence that it did not come before that time, as defendant did not seem to have any reason for believing that they or either of them would certify to the facts set forth in their affidavits. That the newly-discovered evidence would produce a different result in the event a new trial were granted we think possible, if not highly probable. It is true that Vaughn, in two counter-affidavits filed by the State, denies ever having made either of the statements set forth in the affidavits presented by defendant in support of his motion. It may also be conceded that the statements of Vaughn as set forth in the affidavits presented by defendant could not be shown in evidence without first calling Vaughn's attention to the facts there stated and laying a foundation therefor as if for impeachment, but such evidence would not be merely cumulative, nor the object in introducing it merely to impeach Vaughn, but rather as tending to show that he was the first person who claimed to be in possession of the stolen wagon, and who offered to sell it after it had been stolen, thereby raising the presumption against

him that he either stole it himself or, if he did not steal it, then he came into possession of it after it was stolen.

For these considerations, we are constrained to reverse the judgment and remand the cause for further trial. It is so ordered.

All concur.