## THE STATE v. JAMES WHITE, Appellant.

### Division Two, June 17, 1913.

1. **INFORMATION: "Upon His Oath."** The phrase "upon his oath," as used in the information, is synonymous with "upon his official oath" or "oath of office."

2. ———: **Assistant Prosecuting Attorney in Jackson County May Sign and Swear To.** Under Sec. 10738b, Laws 1911, p. 393, an assistant prosecuting attorney in Jackson county has power to sign and swear to an information as such assistant.

3. **EVIDENCE: Conspiracy: Involving Husband of Prosecuting Witness.** Evidence upon the question whether the prosecuting witness's husband had been discharged from employment with

a detective agency for drunkenness or misconduct, is not admissible on the trial of defendant for robbing the prosecuting witness of her handbag and its contents, but evidence as to a conspiracy between the prosecuting witness and her husband, through which, by making a tool of defendant, the husband might regain his position with the detective agency, was admissible, and the defendant cannot complain of the trial court's ruling in accordance with the foregoing statements.

4. ———: ———: **Cross-Examination.** Evidence as to whether the husband of the prosecuting witness had been trying to secure employment from the city, or when he was last employed by anyone, or how long he had been working for himself, was not material to the issues in a prosecution of defendant for robbing the prosecuting witness of her handbag and its contents, nor was it error, upon cross-examination, for the court to sustain an objection to an inquiry as to where she got the jewelry which she carried in the bag.

5. ———: **Exceptions: Appeal.** Where the court sustained defendant's objections to certain questions asked of some of the witnesses by the prosecuting attorney, and struck out the answers, after which defendant made no further request or objection, there is no matter of exception for the Supreme Court to review.

6. ———: **Verdict: Appeal.** Where there is substantial evidence to support a verdict, the judgment will not be set aside on appeal.

Appeal from Jackson Criminal Court.—*Hon. Ralph S. Latshaw*, Judge.

AFFIRMED.

*Holmes Hall* and *R. S. Robertson* for appellant.

*John T. Barker,* Attorney-General, and *William M. Fitch,* Assistant Attorney-General, for the State.

WILLIAMS, C.—Defendant was tried in the criminal court of Jackson county, Missouri, under an information charging him with robbery in the first degree, found guilty by the jury, and his punishment assessed at five years in the penitentiary. He appeals to this court.

The evidence on the part of the State tended to show that on November 29, 1912, between 6:15 and 6:25 p. m., the prosecuting witness, Mrs. Cora Rogers, was going east on Thirteenth street, in Kansas City, Missouri, from her place of work to her home in said city. When she reached a point near an alley between Locust and Cherry streets, on Thirteenth street, she saw a colored man coming towards her, and she stepped to one side. The colored man, when he came up to her, grabbed the hand bag which she carried on her arms. The handle to the hand bag was of new ribbon, and did not break when the bag was grabbed. The man pulled at the bag and drew the prosecuting witness a distance of about twenty feet up the alley, where she fell down, and the bag was pulled loose from the handle, her assailant running away with it. It contained a small sum of money, also rings and jewelry, all of the value of about two hundred dollars. While Mrs. Rogers was being dragged into the alley she cried for help. A Mr. Showalter, who at the time lived in a house adjoining the alley, rushed out of his kitchen door just in time to see the colored man run away and the prosecuting witness attempt to get up. Mrs. Rogers, at the trial, identified the defendant as the man who assailed and robbed her, stating that the street light was ample to allow a good view of him at the time. Witness Showalter testified that he was within about ten feet of the man when he started to run away, and that he got a good look at him in the light from the kitchen window and door of his house, and that he is positive that the defendant was the man he saw running away. He gave chase to him for about a block, but was unable to catch up with him. This was the State's evidence in chief.

The defendant testified that he was born at Sedalia, Missouri, going through the high school there, and later attended the Western Baptist College, at Macon, Missouri, where he graduated; that he then

attended a law school at Topeka, Kansas, and that about ten months before the date of this alleged crime he came to Kansas City to assist his brother in the work of paper-hanging, so that he might obtain funds to enable him to start practicing law. He admitted that he had been arrested and fined for gambling since coming to Kansas City. He testified that a day or two before he was arrested for the crime charged against him he received information through his brother that the officers were looking for him, and that he then visited some of the police stations but was unable to discover what he was wanted for. He, however, did not visit station number four, the officers of which were looking for him. Defendant attempted to establish an alibi, testifying that he was at his home that evening from 4:30 until 9 o'clock.

Witness Shline, a tailor, testified that he was at defendant's home that evening to see about making a collection for clothing he had sold, remaining there nearly half an hour and leaving about seven o'clock, and that defendant was there at that time.

Witness Adolphus Ewing testified that he went to defendant's home about fifteen minutes before seven o'clock that evening, and remained until about nine o'clock, and that defendant was at home during that time.

Defendant undertook to establish a good reputation by witness W. E. Connor, who, however, was unable to qualify as a character witness.

The State in rebuttal introduced five witnesses, including three police officers and the chief of detectives of Kansas City, who testified that defendant's reputation for general morality in the neighborhood in which he lived was bad.

## OPINION.

I.  The information, which was filed December 3, 1912, reads in part as follows: "Now comes Mord

**Information: Upon his Oath.** M. Bogie, assistant prosecuting attorney for the State of Missouri, in and for the body of the county of Jackson, and upon *his oath* informs the court,'' etc.

The information is signed and sworn to by said assistant prosecuting attorney. Appellant contends that the information is insufficient because it did not charge that the prosecuting attorney informed the court upon his ''official oath'' or ''oath of office,'' and furthermore that it does not affirmatively appear that the assistant prosecuting attorney had power to sign the information.

As to the first contention, it is sufficient to say that the phrase ''upon his oath,'' as used in the information, is synonymous with ''upon his official oath'' or ''oath of office.'' [State v. Atchley, **Prosecuting Attorneys in Jackson County.** 186 Mo. 1. c. 197.] The statute defining the duties of assistant prosecuting attorneys of Jackson county, applicable at the time this information was filed, is section 10738b, Laws of 1911, page 393. In that section it is provided that the ''prosecuting attorney *and his assistants* shall institute . . . all criminal actions in all courts of said county,'' and ''said assistants shall assist the prosecuting attorney generally in the conduct of his office, under his direction and subject to his. control,'' etc. The language of the statute is sufficiently broad to invest the assistant prosecuting attorney with power to sign the information as such assistant prosecuting attorney. [State v. Speritus, 191 Mo. 24.]

II. The appellant next contends that the court erred in excluding defendant's offer of **Rulings on Testimony.** certain testimony. The offer and the court's ruling thereon are as follows:

''Mr. Bowron (out of the presence and hearing of the jury): The defendant offers to introduce Charles P. Wight, captain and manager of the Pinkerton De-

tective Agency, in Kansas City, Missouri, to impeach the credibility of the prosecuting witness, Mrs. G. W. Rogers, for the purpose of showing a collusion between G. W. Rogers and his wife, the prosecuting witness in this case, making a tool of this defendant for the purpose of said G. W. Rogers making a record for himself as a detective and officer in order to get back on the Pinkerton force of detectives of Kansas City, Missouri, the position that he once held, and was discharged from on account of bad conduct on his own part; the defendant's contention being that said G. W. Rogers was the instigator of this whole affair, and that the crime charged—in fact it never was committed, and that this defendant knew nothing of it, and was not near the place where the crime is alleged to have been committed, and that said Rogers is the one that procured the officers and induced them to go and arrest this defendant several days after the alleged crime was committed.

"The Court (out of the presence and hearing of the jury): The court will permit you to show this contention, if you can. The court will not permit you to assail the veracity of Mrs. Rogers by showing that her husband was discharged from the employment of the Pinkerton Detective Agency for drunkenness or misconduct. If you can show that the prosecuting witness, Mrs. Rogers, was in a conspiracy, or was induced by her husband or anybody else to swear falsely against this defendant, the court will give you every opportunity and every agency in the hands of the court or at its disposal to ferret out this conspiracy, but the court will not permit you to show that the husband of the witness was discharged from a position as affecting the credibility of the witness.

"Mr. Gray: Exception."

It becomes apparent from a reading of the above that the court committed no error in its ruling. The fact that the husband of the prosecuting witness was

or was not discharged from the employment of the detective agency was not competent evidence for any purpose. As to the other portions of the offer, the court ruled in defendant's favor. Neither was it error for the court to sustain the State's objection to questions asked the prosecuting witness as to whether her husband had been trying to secure employment from the city, or when he was last employed by any one, or how long he had been working for himself, as the facts which these questions sought to elicit were not material to the issues. On cross-examination, the prosecuting witness testified that she had owned the stolen jewelry for about seven years. Appellant's counsel then asked her where she got the jewelry. To this question the State interposed an objection which the court sustained, and appellant saved an exception. While wide latitude is generally allowed in cross-examination, yet we are unable to see wherein appellant was injured by the court's ruling, and the same did not therefore constitute reversible error.

III. Appellant complains of certain questions asked by the prosecuting attorney of some of the witnesses. The court sustained defendant's objection to each of said questions, and granted each of his requests with reference to striking out certain answers made by the witnesses. Defendant's counsel made no further request or objection concerning the same, and since the court fully sustained his objections and granted his requests, there is no matter of exception in the record upon which appellant can build a question for review here.

**Exceptions.**

IV. It is next insisted that the verdict is against the weight of the evidence, and that defendant's evidence proved a "complete" alibi. Defendant's brother and sister did testify that he was at his home the

Weight of
Evidence. entire time between six and seven o'clock the evening of the robbery. Two other witnesses testified for defendant as to his whereabouts that evening, but their testimony, carefully read, discloses that what they say might be true, and still not establish an alibi for defendant. One of these witnesses, the tailor, is very indefinite and uncertain as to the time he saw defendant that evening. He says he left defendant's house about seven o'clock, and that he was there "about nearly half an hour," and that he didn't pay any attention to the time. The other disinterested witness testified that it was "about a quarter to seven, I think, or something like that," when he first saw defendant at his home that evening. The evidence on the part of the State fixed the occurrence of the robbery at between 6:15 and 6:25 p. m. It is not shown how far defendant lived from the scene of the robbery, but a man could have traveled several blocks between that time and the time when the two disinterested witnesses claim to have seen defendant at his home.

The two witnesses for the State were positive in their testimony that defendant was the person who committed the robbery. There was certainly substantial evidence to support the verdict, and where this is true, the judgment on appeal will not be set aside. [State v. Sassaman, 214 Mo. 695; State v. Sharp, 233 Mo. 269; State v. Reed, 237 Mo. 224; State v. Fields, 234 Mo. 615.]

Appellant makes no complaint as to the instructions given, but we have carefully examined same, and find that they fully and fairly declare the law applicable to the case and are free from error.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. All the judges concur; *Faris, J.,* in result.