**STATE of Missouri, Respondent,**

v.

**Harold Ray JACKSON, Appellant.**

**No. 52850.**

Supreme Court of Missouri,
Division No. 2.

March 11, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Timothy D. O'Leary, Sp. Asst. Atty. Gen., Kansas City, for respondent.

J. Whitfield Moody, The Legal Aid and Defender, Society of Greater Kansas City, Kansas City, for appellant.

BARRETT, Commissioner.

Mr. and Mrs. Charles Meredith conducted a building materials business at 3111 E. 17th Street. On June 10, 1966, shortly after one o'clock, Mrs. Meredith was in the outer office and Mr. Meredith and a Mr. Schwam were in his small inner office discussing a business matter. About 1:20 three Negro boys came in the office and asked for employment. Mrs. Meredith told them that theirs was a small organization and they had no jobs. The boys left but returned in about ten minutes and asked for "an application for employment to fill out." Mr. Meredith, hearing this conversation, came out of his office, told the boys that they had no jobs and the boys left. Almost immediately Mr. Meredith and his business associate left for lunch and as they walked east on 17th Street Mr. Meredith looked back and again saw the three boys, this time walking toward the office. In the meantime Carl Taylor, a customer, came in and was standing with his back to the door. The three Negro boys again came in and one of them with "a gun to my head" grabbed Taylor by the arm, said "This is a hold-up," and shoved him into Mr. Meredith's office. A second boy (in the trial they were referred to as "No. 1, No. 2 and No. 3") pointed a gun at Mrs. Meredith, told her it was a holdup, and ordered her to go into Mr. Meredith's office. Instead of obeying, Mrs. Meredith defied the boy and told him she was going to call the police. When she reached for the telephone the boy came toward her and she threw the phone in his face, "he became frightened and ran" out the door. The third boy had gone to the safe and came out with the cashbox, grabbed Miss Mullane's purse (Miss Mullane was an employee) and "we struggled in the doorway." This boy hit Mrs. Meredith in the head with the cashbox and left with approximately $400.00.

Harold Ray Jackson, age 17, was separately charged with the armed robbery of Mrs. Meredith. A jury found him guilty and fixed his punishment at five years' imprisonment. Upon the trial of the cause and here Jackson has been represented by the Legal Aid and Defender Society of Kansas City. And upon this appeal appellant's counsel have briefed and orally argued the single assignment that the trial court erred in not sustaining his motion for a new trial on the grounds of newly discovered evidence.

The assignment of error arose in these circumstances: Upon the trial of Jackson Mr. Meredith said that he got a good look at him, that "he did most of the talking" and he positively identified him as one of the three Negro boys who entered his place of business and asked for employment. Taylor, the customer, said that he got a good look at the boy who pointed the gun at him and with certainty he identified the appellant Jackson as that one. There were three Negro boys, Harold

Ray Jackson, Charles Lacy and John Davis. Taylor did not identify all three boys, he only identified two. While Meredith was not asked whether he identified all three boys on cross-examination he described them; there was quite a difference in their heights, Lacy had "pocks on his face" and Davis was much lighter in color than the other two. Both of these witnesses denied that they "leaned on" Mrs. Meredith's identification. And before their arrest on July 1 Mrs. Meredith gave the police a description of one of the three robbers and except as to age gave a fairly accurate description of Jackson. In any event, upon this trial Mrs. Meredith positively identified Jackson as "the man that held the gun on Mr. Taylor." When asked whether she was "absolutely sure" she replied, "Positive" and finally she said, "No doubt in my mind whatever." She said that the boy who held the gun on her (Davis) was the first to leave, that the appellant who held the gun on Taylor was the second one to leave and that the third one (Charles Lacy) with whom she struggled was the last to leave.

The appellant was tried on October 24th and 25th, 1966 and had until November 25, 1966, to file his motion for a new trial. On November 16th and 17th, 1966 Charles V. Lacy was tried and Mrs. Meredith identified him: "That is the man, without a doubt, that I struggled with." On cross-examination Charles Lacy's counsel—the same lawyer who defended Jackson—asked Mrs. Meredith if she had not identified Robert Lacy, Charles' brother, as one of the robbers and she said that she had, thus identifying four people when in fact there were only three. And then counsel said, "and then you later changed your identification from Robert Lacy to Charles Lacy, is that correct?" But Mrs. Meredith replied: "No, sir, no, sir. Charles Lacy has never been a question in my mind." And then she said, "but Robert Lacy is the same stature—the same build as one of the other men." And then it developed that on one occasion she did

"mistake Robert Lacy for Harold Ray Jackson" she said. "Q. After you had pointed out the brother of this defendant, Robert Lacy, to the police as participating in this robbery, what did you tell the police that Robert Lacy did? A. Held a customer at gun point."

This is the newly discovered evidence upon which the appellant relies as entitling him to a new trial. It is urged that while Taylor identified the appellant as the one who held the gun on him, had appellant or his counsel known that Mrs. Meredith once mistakenly identified Robert Lacy, who admittedly had nothing to do with this robbery, the fact could and would have been developed. It is said that the evidence is not merely impeaching (State v. Gish, Mo.App., 371 S.W. 2d 654, 657–658; State v. Meller, Mo., 382 S.W.2d 671) or cumulative of his alibi (State v. Thomas, Mo., 82 S.W.2d 885) but "could raise doubt in the minds of the jury *as to whether or not Jackson participated in the robbery,* particularly since the defendant Jackson and two other witnesses testified that he was at another place attending a party at the time of the robbery." (Emphasis supplied.) It should be noted that in testifying in the Lacy case Mrs. Meredith does not admit that her testimony in the Jackson case was false or even mistaken in any respect (39 Am.Jur. Criminal Law, Sec. 169, p. 175), she only admits that on one occasion she mistakenly identified Robert Lacy as the appellant Jackson. She does not recant and so she was right and telling the truth when she made her in-court identification of Jackson as the one who held the gun on Taylor. It is not established that Mrs. Meredith gave false testimony in this case and even though on some unspecified occasion she was once mistaken in identifying Robert Lacy that fact established in Jackson's case would not necessarily and in point of fact prove that she was wrong in her identification upon this trial.

These observations and inferences distinguish this case from the burglary and larceny case of State v. Jennings, 326 Mo. 1085, 34 S.W.2d 50. There Jennings' drunken companions testified that it was he who threw a whiskey bottle through a glass door of a hardware store in Sturgeon and angered because the three of them could not find more whiskey "suggested that they take something for their trouble" and carried off guns, knives and flashlights. In that case there was a newly discovered witness, a young boy, 17, who left his girl's home at 11:15 and passed the hardware store. He saw and recognized the two men standing on the walk in front of the store as Claud and Pete Powers (Jennings' drinking companions), talking "in an undertone" and after he crossed the street "he heard * * * the breaking and tinkling of glass." And, "(h)e had never mentioned these facts to anyone until after defendant's trial, when he was heard to say at school that they had convicted the wrong man." This newly discovered evidence was not only impeaching of Jennings' erstwhile companions or merely cumulative of his defense, "taken in connection with all the evidence submitted, was credible and sufficient to raise a reasonable and substantial doubt in the minds of a jury, we think, resulting that a jury again should be permitted to pass upon the guilt of defendant." In short, the school boy's evidence had a tendency to show that the Powers boys and not Jennings broke into the hardware store. By the same token the case is unlike the uncommunicated threats in an assault with intent to kill case which would show that the defendant may not have been the aggressor as well as "his animus towards the accused" (State v. Bailey, 94 Mo. 311, 315–316, 7 S.W. 425, 427) with the consequence that the newly discovered evidence may well have affected the result. So too, in State v. Speritus, 191 Mo. 24, 90 S.W. 459, the newly discovered evidence tended to show that the state's chief witness may himself have stolen the wagon.

The newly discovered circumstance in this case does not show that any testimony or fact material to the cause was in point of fact not true as the newly discovered evidence as to the ownership of a knife in a circumstantial evidence case of murder had a "tendency to show that one of the main things relied on by the prosecution to fix guilt on the defendant, to-wit, that he was owner of the knife, was not true." State v. Murray, 91 Mo. 95, 104, 3 S.W. 397, 400. Of course it was not only important, it was necessary to establish as a fact Jackson's presence and participation in the robbery of the materials business at 3111 E. 17th Street and while in one sense her mistaken identity of another person on some occasion may have had some substantive or probative value, her identification did not stand alone. Even without her testimony there is other unattacked evidence of his identity and presence and thus the new evidence is no more than impeaching of her testimony. In short, upon this record it may not be said that the trial court in denying a new trial on the ground of newly discovered evidence so abused its discretion that this court should grant the appellant a new trial. 39 Am.Jur. (New Trial) Sec. 157, p. 164; 24 C.J.S. Criminal Law § 1453, p. 172; State v. Green, Mo., 305 S.W.2d 863. For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.