The State v. Bailey.

THE STATE v. BAILEY, *Appellant.*

1. **Practice, Criminal**: CONTINUANCE: ILLNESS OF DEFENDANT'S ATTORNEY. It was not error to overrule defendant's application for continuance in a criminal case, based upon the illness of his counsel, where the facts of the case were few and simple, and the defence was conducted by a partner of his counsel, assisted by another attorney, there being nothing to show that defendant suffered any prejudice.

2. ———— : ———— : COUNTER-AFFIDAVITS. The prosecuting attorney may file affidavits in opposition to the affidavit of a defendant in a criminal case in support of his application for a continuance.

3. ———— : MOTION FOR NEW TRIAL: UNCOMMUNICATED THREATS. In a case where the evidence left it in doubt who was the aggressor in an affray, a motion for new trial, based upon the ground of newly-discovered evidence, consisting of uncommunicated threats made by the prosecuting witness against the defendant, should be sustained, where there was no evidence of such threats received upon the trial and they came to the knowledge of the defendant after verdict. Such evidence was not cumulative, and would tend to show who was the real aggressor.

*Appeal from Clark Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED AND REMANDED.

The State v. Bailey.

*J. W. Howard* for appellant.

(1) The court should have sustained defendant's motion and granted him a continuance. *Rice v. Melendy*, 36 Iowa, 166; *Jarvis v. Shacklock*, 60 Ill. 378. (2) The court should not have allowed the prosecuting attorney to file counter-affidavits in the matter of defendant's application for a continuance. *State v. Scott*, 44 Iowa, 93; *Quincy Whig Co. v. Tillson*, 67 Ill. 351; *Manning v. Jamison*, 1 Cranch, 66, 285; *Linville v. Golding*, 11 Ind. 285. (3) The court should have sustained defendant's motion for a new trial upon the ground of newly-discovered evidence. *State v. Alexander*, 66 Mo. 148; *State v. Lee*, 66 Mo. 165; *Campbell v. People*, 16 Ill. 17; *State v. Sloan*, 47 Mo. 604; *Stokes v. People*, 53 N. Y. 164.

*B. G. Boone*, Attorney General, for the state.

(1) (*a*) Generally considered, a motion for a continuance is addressed to the sound discretion of the trial court, and this will not be interfered with unless it appears to have been unsoundly or oppressively exercised. *State v. Burns*, 54 Mo. 274; *State v. Sayers*, 58 Mo. 585; *State v. Lange*, 59 Mo. 418; *State v. Hollenscheit*, 61 Mo. 302; *State v. Fox*, 79 Mo. 109; *State v. Wilson*, 85 Mo. 134. (*b*) Absence of counsel as a ground for continuance is not favored by the courts, especially when it appears that defendant has not suffered prejudice or shown diligence. *Wright v. State*, 18 Ga. 383; *Allen v. State*, 10 Ga. 85; *Greer v. Parker*, 85 Mo. 107; *Jacob v. McLean*, 24 Mo. 40. (*c*) There is nothing to show that defendant was in any way prejudiced by the absence of the counsel, alleged to have been ill, or that the application for a continuance was improperly overruled. (2) The law of this state is silent on the filing of counter-affidavits to motions for continuance.

This is a matter of practice within the discretion of trial courts. Unless it is shown that this discretion has been improperly exercised, it will not be disturbed. *Riggs v. Fenton*, 3 Mo. 28. (3) Evidence of uncommunicated threats are only admissible in evidence in cases of homicide, when it is shown that the deceased was the aggressor, or was making some effort to carry out the threats. *State v. Downs*, 91 Mo. 19; *State v. Ryder*, 90 Mo. 54.

SHERWOOD, J.—The defendant, Bailey, was indicted under the provisions of Revised Statutes, section 1263, for an assault with intent to kill one Horton, by shooting him with a pistol. Being tried, he was convicted and sentenced to imprisonment in the penitentiary for the term of two years and six months. The errors assigned are : (1) Refusal to grant a continuance of the cause, applied for on the ground of the sickness of one of the defendant's counsel; (2) permitting the prosecuting attorney to resist the granting of a continuance by filing counter-affidavits; (3) denying the motion of the defendant for a new trial, which was based upon the ground of newly-discovered evidence.

I. There was no error in denying the defendant a continuance. It is true that the counsel he had consulted in the cause was prevented from attending at that term of court, owing to illness; but the facts of this case were few and simple, and, besides, the particular attorney who was consulted was a member of a firm of lawyers known as Matlock, Hiller & Howard, one of which firm, assisted by another attorney, defended the defendant on the trial. If it reasonably appeared that defendant had suffered any prejudice in consequence of his application in this behalf being denied, a different question might arise, one not now before this court.

II. Nor was error committed in allowing the prosecuting attorney to file a counter-affidavit. There being

no statute governing this point of practice, it was long ago ruled by this court that it was within the discretion of the trial court to permit the filing of counter-affidavits. *Riggs v. Fenton*, 3 Mo. 28. It is true, in that case, the application for a continuance was grounded on the absence of a witness; but this does not affect the principle.

III.    Relative to the third error assigned : In this case it is difficult to tell who was the aggressor. If Horton, the prosecuting witness, and Morrison, who was with him at the time of the shooting, are to be credited, Bailey, the defendant, was the assailant, and the only one to blame in the matter. Their story, in brief, is, that Horton and Morrison were riding two mules of the former, who had a bar of iron in his right hand, when they met Bailey walking, and upon Horton asking Bailey if he had clubbed his mules, he called him a d—d liar, ordered him to get off the mule, and while he was in the act of doing so, Bailey, who was some fifteen feet distant, began firing, one ball striking Horton on the left leg and glancing along the shoulder, another ball passing through his clothing, grazing his breast, and the third going through the nose of his mule.

If, on the other hand, the defendant is to be believed, Horton was the aggressor. When they met he accused Bailey of having clubbed his mules, and upon the latter denying it, called him a liar, and having a large bar of iron in his right hand, began to dismount, whereupon Bailey told him not to come towards him with that iron, and when Horton got on the ground, fired the revolver into the air, and told him to stop; but he came around the head of the mule, when Bailey fired again, and when Horton came around the head of the mule and toward Bailey again, with the iron in his hand, Bailey fired the third and last shot, and when Horton got up, told him to go home, that he could kill him, but did not want to do it. Two witnesses, who

were at work in the field, in full view of the parties, but not within ear-shot, state that when Horton and Bailey met, the latter turned out of the road, and that Horton was on the ground before the first shot was fired. It was also in evidence, that Horton bore the reputation of a dangerous man, and some two weeks before the affray, had tried to provoke a difficulty with Bailey; had followed him through the streets of Kahoka, and had compelled him to take refuge in the saloon of one Shannon, and while Horton was in front of Shannon's saloon, a revolver dropped from his pocket, Bailey, it seems, being in the back room at the time. And it was in consequence of this occurrence at Kahoka, that Bailey bought the pistol with which the shooting was done, and had carried it with him down to the time of the affray.

The newly-discovered evidence was to the effect that, on this occasion, one Spangler had heard Horton, after being pushed back out of the saloon by Shannon, say that he intended to kill Bailey, and that, shortly before Horton started home, he again threatened to kill Bailey before sundown. These threats were not communicated to Bailey, or any one else, till after the trial. I am of opinion that the motion for a new trial, based upon this newly-discovered evidence, should have prevailed. The evidence was not cumulative, that is, evidence of the same kind, to the same point, as that already introduced, since, on the trial, there was no evidence of threats introduced. "Evidence is cumulative which merely multiplies witnesses to any one or more of those facts before investigated, or only adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth, of a different character, although it tends to prove the same proposition or ground of claim before insisted on, is not cumulative, within the true meaning of the rule on this subject." 3 Gra. & Wat.

New Trial, 1053, 4, 5, 6, 7. Of course, if it be clear that the new evidence will have no effect upon another verdict, the motion for a new trial should be denied; but if it be doubtful how the evidence would affect the result, the motion should be granted. The court, in such cases, should not attempt to pronounce for the jury in advance, but should give them an opportunity to pass upon the evidence, if competent and material, and to determine its weight for themselves. *Ib.*, 1044. If the evidence would have a tendency to shape the verdict of the jury in a new trial, the motion should prevail. *State v. Murray*, 91 Mo. 104. In this state it is well settled that where it is in doubt who is the aggressor in an affray, uncommunicated threats are admissible in evidence, to show the purpose of such aggressor, and his *animus* towards the accused. *State v. Downs*, 91 Mo. 19, and cas. cit. The theory of the admission of such evidence is this: That, in cases of doubt as to who made the first assault, evidence of uncommunicated threats is admissible to prove who was the real aggressor, it being more likely that one who had made previous hostile threats or previous hostile preparations, was the initiator of the strife, than if he had made no such threats, or preparations. In a word, in doubtful cases, such evidence is receivable to shed what light it may on the question at issue and to assist in fixing the guilt where properly it belongs. Whart. Crim. Evid., sec. 757.

As the result of these views, the refusal of the trial court to grant a new trial must be held reversible error, and that the judgment be reversed and the cause remanded. All concur, except Ray, J., absent.