State v. Wade.

---

## THE STATE v. GEORGE WADE, Appellant.

Division Two, December 31, 1924.

1. **CARNAL KNOWLEDGE:** Uncorroborated Prosecutrix: Physical Facts. Clear and positive testimony of the fifteen-year-old prosecutrix upon every essential element of the crime of carnal knowledge, though uncorroborated, and though the sexual intercourse oc-

curred in broad daylight in an open field where she was running a disc and defendant was plowing, is sufficient to sustain a conviction.

2. ——: ——: ——: **Unshaken Story.** The testimony of the fifteen-year-old prosecutrix was clear and positive upon every essential element of the crime of carnal knowledge, and her story was entirely unshaken on cross-examination. She was running a disc and he was plowing in an open and level field, and there was no vegetation, or trees to obstruct the view, but no testimony to indicate that her team may not have been between them and her mother's house, a half mile away. She testified that she stopped her team to rest, and defendant stopped his about two rods away and came over to her, and "persuaded" her until she "had to give up" and that the act of sexual intercourse occurred while they were standing, and about ten minutes were consumed in the occurrence. Her character is not attacked, and no motive for a false charge is shown. He was a farm hand, and admitted that he was plowing and she was running the disc in the field on the particular day, but otherwise flatly denied her testimony, and stated that her brother and one Buford were in the field at the time. She testified that she and defendant alone were in the field. The brother died between the occurrence and the trial, and no attempt was made, except by defendant's testimony, to show that the brother was in the field or on the farm on the particular day, and no reason is assigned why Buford was not used as a witness by defendant. *Held*, that the court cannot rule that her uncorroborated testimony was out of harmony with the physical facts, the surrounding circumstances and the ordinary experiences of mankind, but the question of defendant's guilt was one for the jury to determine. [Distinguishing cases of forcible rape.]

3. ——: **Standing.** The court will not rule that an act of sexual intercourse cannot be accomplished in a standing position. Whether it can be accomplished in that way is a question about which every juror knows as much as do the courts.

4. ——: **Discomfort.** The fact that the fifteen-year-old prosecutrix, after the act of sexual intercourse, went on about her work, riding a disc plow and driving a team the rest of the forenoon, in the field where the act occurred, does not prove that she suffered no injury or discomfort, though her first sexual act, where she was not resisting the act; and the record being silent on the question the court cannot assume that she suffered no injuries or inconvenience or discomfort, and cannot assume that her uncorroborated testimony is affected by the absence of testimony upon the point.

State v. Wade.

5. ———: Defendant's Subsequent Conduct. The fact that defendant, after the act of carnal knowledge in an open field where he and prosecutrix were plowing, remained in the field and went on with his work, does not disprove the charge. If the act was by consent of the fifteen-year-old prosecutrix, there was no reason why he should have gone away.

6. ———: Failure to Tell of Occurrence: Credibility. A denial by prosecutrix that she told any one what her testimony would be, even though she is apparently untruthful in that particular, affects only her credibility, which is a matter for the jury to pass upon.

7. ———: Punishment: In Discretion of Court: Erroneous Instruction. Where the punishment to be imposed under a statute is "in the discretion of the court", a mistake in the instruction as to the range of the punishment is immaterial. So that where the statute provided that "if the penalty or punishment for an offense be reduced or lessened by any alteration in the law creating the offense, such penalty or punishment shall be assessed according to the amendatory law," and the existing statute under which defendant was prosecuted was amended before his trial by reducing the punishment from a maximum imprisonment of five years to imprisonment at two years, but by both the existing statute and the amendatory act the punishment to be imposed was "in the discretion of the court," an instruction telling the jury that they might fix defendant's punishment at imprisonment "for not less than two nor more than five years" was not error, for it made no difference what the jury were told concerning the range of the punishment, or what punishment they fixed in their verdict finding defendant guilty.

8. ———: Age of Defendant: Omitted from One Instruction. In a carnal knowledge prosecution, the omission from an instruction, given for the purpose of informing the jury that the consent of the prosecutrix is not a defense, of a statement that defendant must be over seventeen years of age to make the carnal knowledge unlawful, is not error (a) where the evidence is clear and unmistakable that defendant was over seventeen years of age, (b) the instruction does not attempt to cover the whole case or direct a verdict, and (c) other instructions given require the jury to find that he was over seventeen years of age.

9. ———: Previous Chaste Character Undefined: No Specific Assignment. It is unnecessary to determine whether a definition of the words "previous chaste character" was material to the issues in the carnal knowledge prosecution where defendant asked no instruction defining the words, and in his motion for a new trial as-

signed only as error "the failure of the court to properly instruct the jury on all material issues in the case," since such assignment did not specifically call the attention of the trial court to the alleged error of failing to define the words, and the question is not therefore for consideration on appeal. A definition of the words did not involve a fundamental right. [Distinguishing State v. Conway, 241 Mo. 271.]

10. **INSTRUCTION: Covering Numerous Subjects: Refusal of Defendant's.** Refusal of defendant's requested instructions covering the subjects of reasonable doubt, presumption of innocence and the effect of the finding of the indictment is not error where all these subjects are sufficiently covered by one instruction given. The contention that the subjects are not fairly presented to the jury if all are covered, in separate paragraphs, in one instruction given, is without merit.

Citations to Headnotes: 1 to 5, **Rape:** 1 and 2, 33 Cyc. 1497; 3, 33 Cyc. 1501; 4, 33 Cyc. 1496; 5, 33 Cyc. 1491. Headnotes 6 to 10, **Criminal Law:** 6, 16 C. J. 2291 (and **Rape,** 33 Cyc. 1501); 7, 17 C. J. par. 3700; 8, 16 C. J. par. 2485; 9, 17 C. J. pars. 3349, 3351; 10, 16 C. J. pars. 2473, 2506.

Appeal from Monroe Circuit Court.—*Hon. Charles T. Hays,* Judge.

AFFIRMED.

*A. T. Stuart* and *E. L. Alford* for appellant.

(1) The giving of Instruction 1 on behalf of the State was error. This instruction misdirected the jury as to the range of punishment which the instruction informed the jury they should assess in the event they found the defendant guilty. Sec. 3709, R. S. 1919; Laws 1921, p. 284a, sec. 3248; State v. Sands, 77 Mo. 118; State v. McNally, 87 Mo. 644, 658; State v. Tull, 119 Mo. 421; State v. Snyder, 98 Mo. 555; State v. Britton, 183 S. W. 295. (2) Instruction 3 given for the State advised the jury carnal knowledge of an unmarried female of previous chaste character and between the ages of fifteen and eighteen years is unlawful, whether the act was with or without the consent of such female, and omitted to state that the defendant must be over the age of seventeen years. This was error. State v. Johnson,

76 Mo. 121; State v. McLain, 159 Mo. 340; State v. McNally, 87 Mo. 658. (3) It is the duty of the court, whether requested or not, to instruct the jury on all the law of the case and upon all issues presented. The phrase "previous chaste character" as used in the instruction was not defined by the court and failure to do so was error. State v. Conway, 241 Mo. 271; State v. Foster, 225 S. W. 671; State v. Luckett, 246 S. W. 882; State v. Cook, 207 S. W. 833; State v. Douglass, 258 Mo. 281; State v. Connor, 252 S. W. 713. (4) The trial court refused to give defendant's offered instructions numbered 3, 4, 5 and 6 for the reason assigned by the court that said instructions had been covered by other instructions given by the court of its own motion. These refused instructions covered the issue of presumption of innocence and burden of proof. It was reversible error for the court to refuse such instructions since the court undertook in one instruction to cover all such issues and the same were commingled in such instruction and did not sufficiently and clearly direct the jury thereon. State v. Douglass, 258 Mo. 281. (5) The evidence disclosed by the entire record was insufficient to justify or support the verdict of the jury and it should not be permitted to stand. Burkett v. Gerth, 253 S. W. 202; State v. Remley, 237 S. W. 489; State v. Tevis, 234 Mo. 276; State v. Smith, 259 S. W. 506; State v. Goodale, 210 Mo. 275; State v. Brown, 209 Mo. 413; State v. Wheaton, 221 S. W. 26; State v. Primm, 98 Mo. 368; State v. Wilson, 91 Mo. 410; State v. Burgdorf, 53 Mo. 65; State v. Prendible, 165 Mo. 353; Champaign v. Hamey, 189 Mo. 709, 726.

*Jesse W. Barrett,* Attorney-General, and *William L. Vandeventer,* Special Assistant Attorney-General, for the State.

(1) Instruction 1, under the provisions of Sec. 3709, R. S. 1919, incorrectly stated the law as to punish-

ment. But in this class of cases the court assesses the punishment and that part of the instruction may be treated as surplusage. The jury only finds the guilt or innocence of the appellant and if they assess the punishment it is considered only as a recommendation. Sec. 3248, p. 284a, Laws 1921; Sec. 3248, R. S. 1919; State v. Shearon, 183 S. W. 293; State v. Perrigan, 258 Mo. 233; State v. Hamey, 168 Mo. 167, 197. (2) Instruction 3 does not state that the jury must find the appellant to be over the age of seventeen, but that point was fully covered by Instruction 1. Instructions must be construed together and if, when so construed, they state the law, they are sufficient. State v. Finklestein, 213 S. W. 465; State v. Hostetter, 222 S. W. 750; State v. Jones, 225 S. W. 898; State v. Arnett, 278 Mo. 333; State v. Hembree, 242 S. W. 911. (3) No issue was raised as to the previous chaste character of the prosecuting witness and the court's failure to define "previous chaste character" in its instructions was not error, insomuch as it was not requested by appellant. State v. Garrett, 285 Mo. 279; State v. McNamara, 100 Mo. 107; State v. White, 263 S. W. 192; State v. Carr, 256 S. W. 1044. (5) Every element of the offense charged was proven. The jury so found, and this court will not disturb their findings. State v. Stroughton, 189 S. W. 601; State v. Ivy, 192 S. W. 737; State v. Conley, 280 Mo. 21; State v. Thompson, 222 S. W. 789.

DAVID E. BLAIR, P. J.—Defendant was convicted in the Monroe County Circuit Court of the crime of having carnal knowledge of an unmarried female of previous chaste character, between the ages of fifteen and eighteen years. He was sentenced to imprisonment for a term of two years and has appealed. The proof shows that the acts charged against defendant occurred on May 20, 1921. The law, as defined by Section 3248, Revised Statutes 1919, therefore governed the facts necessary to constitute the crime.

As the defendant earnestly contends that the case should not have been submitted to the jury and that we should not permit the conviction to stand, it is necessary to detail and to discuss the facts quite fully. The evidence itself is quite short.

The prosecutrix, Edna Carnes, testified that she and her mother and brother lived on a farm about one mile east of Paris, in Monroe County. Her brother had died prior to the trial. The defendant worked on said farm as a farm hand from March until June, 1921. On May 20, 1921, defendant was plowing in a field about one-half mile from the house where Edna and her mother lived. Edna was also working in the same field, running a disc. Her brother had helped her harness the team and get started and then went to town. Her mother was at work at the house. Something went wrong with the harness or the disc, and defendant assisted Edna in fixing it. Her testimony as to what occurred is the following in substance:

Defendant said "he wanted me to be his girl." Edna said, "No." He said, "Why?" She said, "Mother did not let me have company." Defendant then went on back to his work. About an hour later Edna stopped her team to rest, and defendant stopped his team about two rods away and came over to her. Her testimony then proceeded as follows:

"Q. What was the first thing he said? A. He said, 'I had to be his girl or he would quit work if I would not have intercourse with him.' He said 'he would leave,' and he said, 'Every body else did it, almost all the girls had intercourse with the boys;' and he persuaded me until I had to give up."

She then testified that defendant had intercourse with her and told her not to tell her mother anything about it. They were right by the disc and were standing up. She said defendant pulled her off the disc and then had intercourse with her. He then said, "Everything will be all right," and he told her "not to tell my mother or he would quit work."

The witness then testified to facts tending to prove penetration. Both she and defendant then resumed work in the field until noon. About ten minutes were consumed in the occurrence which she detailed. Edna stayed at home that afternoon and helped work about the house and worked there the following day. She was fifteen years old at the time and had not been married and had never had sexual relations with any man prior to the act with defendant. Defendant was over seventeen years of age.

On cross-examination it was shown that the field, where the act is said to have occurred, was "kindy level" and had no corn or other vegetation growing upon it. There was no one in the field except Edna and the defendant. She had not known defendant before he went to work in March. He had been engaged about the place ever since he came, at plowing, etc. His home was about eight miles away. He continued to work there until June 25, 1921, or about five weeks after the alleged occurrence.

The testimony of defendant was that he lived five miles south of Paris and had lived there all his life, except while he was in the army seventeen months during 1918 and 1919, when he saw service as a soldier in the United States and in France. He said he worked for Eddie Carnes on May 20, 1921, and was plowing on that day and that Eddie and Edna Carnes were there. He also said that one Buford was there. His testimony then proceeded as follows:

"Q. Now I will ask you if at that time you asked her to be your girl? A. No, sir.

"Q. I will ask you if you put your arms around her? A. No, sir.

"Q. Ask you if you touched her in any wise? A. No, sir.

"Q. I will ask you if you told her you was going to quit if she would not be your girl? A. No, sir I did not.

"Q. Now, I will ask you if you was over to that disc where she was any other time during that day? A. No, sir.

"Q. I will ask you if you had sexual intercourse with Edna Carnes May 21, 1921? A. No, sir, I did not.

"Q. May 20th I believe it is? A. No, sir, I did not."

On cross-examination he was asked how long he had been working at the farming business, and said, ever since he had been big enough; for something like fifteen or sixteen years. He said he began working for Eddie Carnes March 23rd and quit the latter part of June. On re-direct examination he denied telling Edna Carnes not to tell her mother anything.

This was all the testimony in the case, except the defendant called five witnesses who testified that his reputation for morality and good citizenship was good. The State did not attempt to show that defendant did not sustain such reputation.

I. Appellant contends that his demurrer at the close of all the evidence should have been given, and that we should now reverse the judgment rendered upon the verdict for the same reason. It is not contended that there is not clear and positive testimony in the record upon every essential element of the crime charged, but we are urged to take such action because "the courts in this State will not permit a conviction to stand upon the uncorroborated testimony of the prosecutrix, where her testimony is not in consonance and in harmony with the physical facts, the surrounding circumstances and the ordinary experiences of mankind."

Corroboration.

It must be conceded that the testimony of the prosecutrix concerning the acts and circumstances attending the alleged act of sexual intercourse with defendant is not corroborated. It is equally true that her uncorroborated testimony as to such acts furnished proof

306 Mo.—30

of every element of the crime charged against defendant.
The most rigid cross-examination failed to weaken her
story in any respect as to such occurrences. She is
corroborated by defendant as to the presence of the
two in the field at the time she fixed in her testimony.
He said Eddie Carnes, deceased at the time of the trial,
and one Buford, were there also. No reason is assigned
why Buford was not used as a witness by defendant.
The prosecuting witness denied that Buford was present,
and testified that her brother had gone to town at the
time of the occurrence.

We are now asked to reverse the case on the ground
that it is unlikely that there is truth in her testimony
that "in the open daylight, in an open field, hard by her
house," the defendant stopped his team and came over
to where prosecutrix was resting her team and "boldly
and without preliminaries solicited carnal intercourse,
accompanied by the dire and terrorizing threat that
if she did not yield 'he would leave,' and he 'persuaded
me until I had to give up,'" and because she testified
that the whole transaction occupied ten minutes, while
both parties were standing in the open field where there
was no vegetation and no crops of any kind, and that
defendant immediately left after admonishing her not
to tell her mother, with the additional blood curdling
threat that if she did "he would quit work."

It is true that, in a number of cases, this court has
held that the facts testified to by the prosecuting witness
therein were so unusual and so out of harmony with
human experience that such testimony had no probative
force. Defendant has cited some of such cases. It is
unnecessary to discuss the soundness of that rule here,
for this case is readily distinguishable from all of them,
at least from all the cases cited by appellant.

Most of such cases may be set aside at once as not
controlling, by the single circumstances that they were
cases of *forcible* rape, where outraged innocence would

compel the woman to denounce the ravisher at the first opportunity. Burkett v. Gerth, 253 S. W. (Mo. App.) 199; State v. Remley, 237 S. W. (Mo. Sup.) 489; State v. Goodale, 210 Mo. 275; State v. Wilson, 91 Mo. 410; State v. Burgdorf, 53 Mo. 65 and Champagne v. Hamey, 189 Mo. 709, cited by defendant, were all forcible rape cases, where immediate complaint was to be expected and absence of such complaint rendered the entire story improbable.

State v. Tevis, 234 Mo. 276, was a case of incest. There the testimony of prosecutrix was contradicted by by her own testimony, and a motive was shown for getting the defendant out of the way.

In State v. Brown, 209 Mo. 413, the charge was incest. Improper motive for the prosecution was shown. Prosecutrix sustained a bad reputation and defendant a good one. Much improbable testimony also appeared.

State v. Smith, 259 S. W. (Mo. App.) 506, was a prosecution for failure of defendant to support his alleged illegitimate child. There prosecutrix sustained a bad reputation for chastity and defendant's reputation was concededly good. Prosecutrix was being ardently courted by several men during the time of conception. She made contradictory statements. She practically admitted the alleged sole act of intercourse with defendant was at her own solicitation and stated that folks generally thought that another than defendant was the father of her child.

State v. Primm, 98 Mo. 368, is not in point. It was a case of alleged seduction under promise of marriage. The reputation of prosecutrix for virtue and chastity was shown to be bad and there was no corroboration of the promise of marriage. In other words, it was a case of *failure* of proof and not of proof of improbable character.

State v. Wheaton, 221 S. W. (Mo. Sup.) 26, was a murder case. There was no positive proof and, in fact, nothing more than suspicious circumstances connecting

defendant with the crime. The most damaging thing in the case was defendant's own conduct after the homicide. It is not in point.

State v. Prendible, 165 Mo. 329, was a case of felonious assault. This court held that there was manifest perjury committed by the prosecuting witness and one of his witnesses. For that and procedural errors the judgment was reversed and the case remanded for re-trial.

None of the above cases, upon which defendant here relies, are controlling in the case at bar. In the first place, this is not a forcible rape case, but rather one of yielding to persuasion. The motive for complaint was absent and there was present motive for concealment. The prosecutrix told a clear story of the alleged act, entirely unshaken by cross-examination. No motive for a false charge is shown. Her character is not attacked. Defendant objected (quite properly, we think, although there is respectable authority to the contrary) to proof offered by the State *in chief* that she bore a good reputation.

It is suggested that it is contrary to human experience that the act of sexual intercourse should be undertaken in an open field in broad daylight. For aught appearing in the record the team may have been between the parties and the house of prosecutrix a half mile away. No other house is shown to have been in view anywhere or nearer than that.

Counsel contend that it is unreasonable to believe that defendant and prosecutrix accomplished the sexual act in a standing position. We are solemnly asked to usurp the function of the jury and hold that it is contrary to human experience that the act can be accomplished in that way. That is a subject which every man on the jury knew as much about as any other man or set of men, including defendant's counsel. Therefore, we cannot say it is either impossible or extremely unlikely. In determining the probability of the evidence of

prosecutrix that the act was so accomplished, the jury had the right to consider the fact that she at least was not resisting defendant and may have assisted him in the act after she yielded her consent.

Counsel say that prosecutrix suffered no injuries, no inconveniences and no discomfort. The record is silent on the point, save for the fact that she went on with her work, riding a disc plow the rest of the forenoon and helped about the house in the afternoon. Even if she suffered no such injury or discomfort, we are not prepared to say that disabling physical injury necessarily follows a woman's first sexual act where she was not resisting the act. That question also was one for the jury.

Then counsel contend that defendant's act of remaining at work disproves the charge. If the act was by consent of prosecutrix, why should he have gone away? Possibly other sexual encounters followed. There is nothing in the record on the point. We do not mean to say that there should have been testimony on that point, but the jury might have thought of that phase of the matter in accounting for his subsequent conduct.

True, prosecutrix strenuously denied telling any one what her testimony would be and apparently was not truthful in that particular. She may have meant that she had not rehearsed what her testimony would be rather than that she had not told the facts. That, however, properly affected her credibility as a witness. This was a matter wholly for the jury to pass upon. There was nothing contradictory in her testimony touching the facts relating to the sexual act in the field.

We are satisfied that this is not a case where an appellate court may set aside a judgment because the testimony upon which the verdict was based was not in consonance and in harmony with the ordinary experience of man and the physical facts and surroundings and circumstances of the case. We hold that a case was

made for the jury and will now proceed to a consideration of alleged procedural errors.

II. Complaint is made of instruction numbered one, in that it misdirected the jury as to the range of punishment which should be assessed in the event of a verdict of guilty. Section 3709, Revised Statutes 1919, provides "that if the penalty or punishment for any offense be reduced or lessened by any alteration of the law creating the offense, such penalty or punishment shall be assessed according to the amendatory law."

**Punishment.**

The prosecution was based on Section 3248, Revised Statutes 1919, because that was the law in force on May 20, 1921, when the crime is charged to have been committed. Laws of 1921, page 284a, amended Section 3248 by raising the minimum age of females to sixteen years and fixing the punishment at two years in the penitentiary instead of a maximum of five years. It is of no special significance here, because, for the purposes of the case, we will assume that such amendment was a valid one; but it will be noted that no mention of the amendment of the punishment is made in said act until its reading as amended is given.

Instruction One told the jury that it might impose as punishment imprisonment in the penitentiary not less than two years *nor more than five years*. This is said to be reversible error. We will not consider whether the instruction was erroneous in this particular, but hold that, assuming that it was erroneous, it was not an error of which defendant can complain. The punishment to be imposed under both Section 3248 and the amendatory act was "in the discretion of the court." It made no difference what the jury was told concerning the range of punishment it fixed in its verdict finding defendant guilty. [State v. Shearon, 183 S. W. (Mo. Sup.) 293; State v. Perrigin, 258 Mo. 233, l. c. 236; State v. Hamey, 168 Mo. 167; State v. Johnson, 234 S.

W. (Mo. Sup.) 794.] The record entry of the judgment shows that *the court* assessed the defendant's imprisonment "as per the verdict of the jury."

In none of the Missouri cases cited by appellant was there any holding to the contrary. Where the mistake as to the range of the punishment given in the instruction was held to be erroneous, the jury and not the court was charged with the duty of fixing the punishment. We overrule this assignment.

Instruction numbered three is said to be erroneous because it omitted the statement that the defendant must be over the age of seventeen years to make the carnal knowledge unlawful. The giving of this instruction was not reversible error for two reasons. First, there is not the slightest question of fact raised under the record that defendant was not over seventeen years of age. Second, the instruction did not purport to cover the whole case or direct a verdict. Besides, instruction one, given by the court of its own motion, and also one of defendant's given instructions properly required a finding by the jury that defendant was over seventeen years of age at the time. The manifest purpose of Instruction Three was to tell the jury that consent of the prosecutrix was no defense in the case.

Age of Defendant.

That defendant was over seventeen years of age, was shown by the testimony of prosecutrix that defendant told her he was over thirty years of age; by the testimony of Mrs. Carnes that he had the appearance of a man of thirty; by the testimony of one of defendant's character witnesses that he had known defendant over twenty years and by the testimony of defendant himself that he had been engaged in farm work for fifteen or sixteen years. There was no testimony suggesting that defendant was not seventeen years of age. Assignment overruled.

Error is assigned for the failure of the court to define "previous chaste character." The defendant did

not request that such an instruction be given. In the motion for new trial error was assigned **Previous Chaste Character.** "because the court failed to properly instruct the jury on all material issues in the case."

It is unnecessary to consider whether a definition of the term "previous chaste character" was material to the issues or not. The assignment in the motion for new trial did not specifically call the attention of the trial court to the alleged error, and the question, therefore, is not properly raised for consideration here. [State v. Harris, 245 Mo. l. c. 451; State v. Snyder, 263 Mo. l. c. 668; State v. Taylor, 267 Mo. l. c. 48; State v. Burrell, 252 S. W. (Mo. Sup.) l. c. 711.]

The cases cited by appellant do not hold to the contrary. In State v. Conway, 241 Mo. 271, the motion for new trial did not call the attention of the trial court to the specific failure to instruct, but the failure involved a "fundamental right" of defendant to have a separate verdict upon the distinct crimes of burglary and larceny charged. It was there recognized that a general assignment, that the court failed to instruct upon all the law of the case, is insufficient.

In State v. Douglas, 258 Mo. 281, a general assignment of this sort was held to be insufficient. In State v. Connor, 252 S. W. (Mo. Sup.) 713, there was an assignment as to the specific failure of the court to instruct.

In State v. Foster, 225 S. W. (Mo. Sup.) 671, and in State v. Luckett, 246 S. W. (Mo. Sup.) 881, the character of the assignments in the motions for new trial is not set out. State v. Cook, 207 S. W. (Mo. Sup.) l. c. 833, did not involve a question of failure to instruct at all. This assignment must be overruled.

III. Error is assigned because the court refused to give defendant's instructions numbered three, four, five and six. They covered the subjects of the presumption

**Numerous Subjects: One Instruction.** of innocense of defendant, the effect of the finding of the indictment and reasonable doubt. These subjects were sufficiently covered by instruction five, given by the court. There is no merit in defendant's contention that the jury was not sufficiently and clearly directed upon these subjects, because they were covered in a single instruction. A separate paragraph was devoted to each subject and they were not commingled in such manner as to be obscure or likely to escape the notice of the jury. It results that this assignment must be overruled.

**Conclusion.** IV. Finding no reversible error in the matters specifically pointed out in appellant's brief and the information, verdict and judgment being found to be in approved and proper form, it becomes our duty to affirm the judgment and it is so ordered. *White, J.,* concurs; *Walker, J.,* absent.