STATE of Missouri, Respondent,

v.

William O. MORRISON, Appellant.

William O. MORRISON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17525, 19103.

Missouri Court of Appeals, Southern District, Division Two.

July 8, 1994.

glary in the first degree, § 569.160, and he was sentenced, as a prior offender, to consecutive terms of ten years' imprisonment for rape and five years' imprisonment for burglary. Defendant appeals, and that appeal is Case No. 17525.

After the jury trial, defendant filed a motion under Rule 29.15, seeking relief from the conviction. The motion was denied after an evidentiary hearing. Defendant appeals from that denial, and that appeal is Case No. 19103. The appeals have been consolidated and will be dealt with separately in this opinion.

### Case No. 17525

Defendant's sole point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, in that the testimony of the victim "was contradictory as to the events of the night of April 26, 1990, and lacked the corroboration required to convict defendant." The 23–year–old female victim will be referred to by the initials "C.R."

In reviewing defendant's challenge to the sufficiency of the evidence, this court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405[1] (Mo. banc 1993). Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

A jury found defendant William Morrison guilty of forcible rape, § 566.030,[1] and bur-

"The uncorroborated testimony of the victim in a case of sexual assault is sufficient to sustain a conviction. 'Corroboration is not required unless the *victim's testimony* is so contradictory and in conflict with physical facts, surrounding circumstances and common experience, that its validity is thereby rendered doubtful.'" (Emphasis added.) *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992) (citing authorities).

---

1. All references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Although use of the corroboration rule is generally, if not always, confined to sexual offenses, defendant's brief apparently seeks to challenge the burglary conviction as well as the rape conviction. For the reasons which follow, this court holds that the corroboration rule does not apply to the instant facts, and it is unnecessary to determine whether it might support a challenge to a conviction of a nonsexual offense.

In *State v. Gardner,* 849 S.W.2d 602, 604 (Mo.App.1993), this court said:

■ "The corroboration rule does not apply where the inconsistency or contradiction is between the testimony of the victim and that of other witnesses, or where the inconsistency or contradiction bears on proof not essential to the case. The misstatements or discrepancies in the victim's testimony necessary to invoke the corroboration rule must go directly to an essential element of the state's case.

"The corroboration rule does not apply merely because the testimony of the victim 'falls into inconsistencies or contradictions as to minor points of a nonessential nature.'" (Citing authorities.)

. . . . .

"[T]he corroboration rule has been criticized. See *State v. Nelson,* 818 S.W.2d 285, 288 (Mo.App.1991); *State v. Ellis,* 710 S.W.2d 378, 380 (Mo.App.1986); *State v. Platt,* 496 S.W.2d 878, 880–81 (Mo.App. 1973)."

In addition to its formal portions, the information charged, in Count I, that the defendant, on or about April 26, 1990, in Scott County, "had sexual intercourse with C.R., to whom defendant was not married, without the consent of C.R. by the use of forcible compulsion."

Count II charged that on or about April 26, 1990, in Scott County, the defendant "knowingly entered unlawfully in an inhabitable structure located at 804 W. Gladys Street, Apartment F, Sikeston, Missouri, and possessed by C.R., for the purpose of committing the crime of rape therein, and while in such inhabitable structure there was pres-ent in such inhabitable structure C.R., a person who was not a participant in the crime."

The state's principal witness was C.R., who testified: "I am 23 and have a three-year-old daughter. On the evening of April 25, 1990, I went to the Double Nickel, a tavern where I worked as a waitress, to pick up my pay check. I was not working that night. I saw several people there, including defendant and Theresa Rodgers. I was four weeks pregnant and didn't know it. Theresa Rodgers and defendant invited me to a party at Theresa's house, but I told them I would not go by myself. I left the Double Nickel about 11:30 p.m. Defendant offered to take me home, but I refused. I was driven in my car to my apartment on West Gladys Street in Sikeston by Paul Burton and David Mullenbrook. They stayed about 30 minutes and left. No one else was there. My daughter was with her grandmother. I went to bed. I lived on the second floor. Both of my doors were locked."

She further testified: "I was awakened by a loud bang and I got out of bed and walked into the living room where I saw defendant and Theresa Rodgers. I had not given either of them permission to enter my apartment. I asked them what they were doing there, and they said they would just throw a party there. I told them to leave. Theresa punched me in my left eye. Defendant shoved me against the wall and into the bedroom and onto the bed. I struggled and fought. Defendant called Theresa in there to help. Theresa held my arms behind my back while defendant took off his pants and my pants and proceeded to rape me. Defendant had sexual intercourse with me. I know what sexual intercourse is, and this was against my will. Defendant saw a picture of my little girl and said that if I ever told that he was there for breaking in or raping that he would find my little girl and take her. I was not married to defendant."

She further testified: "Defendant and Theresa left my apartment about 7 a.m. I went next door to the house of my neighbor, Pam, and I told her, 'Come here and look at my door. It was broken into while I was here.' Pam looked at my door and said, 'Yes, it was definitely broken into.' I did not tell

Pam I was raped because I was scared and afraid that if I told her what happened she would want to tell the police I was raped and defendant would take my girl. Later my landlord, Joan, came and looked at the door and called the police, and the police came to my apartment."

On cross-examination by defense counsel, the witness testified: "I got sick at the Double Nickel and David and Paul drove me home. When I got out of the car, I walked up the steps and went into my apartment. David and Paul and I sat in the living room and at the kitchen table and talked for a while and then they left."

Paul Burton, a witness for the state, testified that he and David Mullenbrook drove C.R. to her apartment at about 11:30 p.m. on April 25, 1990. C.R.'s door was locked when the two men left the apartment. "The apartment door was fine, the facing was not pulled off."

Pam Mahaney, a witness for the state, testified that on the morning of April 26, 1990, C.R. came to her apartment and asked her to look at her door. Pam saw that the door facing was broken. "Somebody had broken in."

The facts alleged in the information were sufficient, if proven, to establish defendant's guilt of rape and burglary in the first degree. The testimony just recounted was sufficient to support the allegations of both counts.

Seeking to support his point, defendant argues: C.R.'s testimony that she was not drunk conflicted with the testimony of Paul Burton that she was drunk; C.R.'s testimony that she walked up the steps to her apartment was inconsistent with Burton's testimony that David Mullenbrook carried C.R., over his shoulder, up the steps to C.R.'s apartment; C.R.'s testimony that she talked with Burton and Mullenbrook in her living room and kitchen for about 30 minutes was inconsistent with Burton's testimony that he and Mullenbrook left C.R.'s apartment after 15 minutes and did not talk with her in either the kitchen or living room; C.R.'s testimony that she fastened the chain lock on her door after Mullenbrook and Burton left her apartment was inconsistent with the testimony of

defense witness Joan Peters, the apartment manager, that she did not see any damage to the chain lock the next morning.

As stated in *Gardner*, the corroboration rule does not apply where the inconsistency or contradiction is between the testimony of the victim and that of other witnesses, or where the inconsistency or contradiction bears on proof not essential to the case. The contradictions on which defendant seeks to rely are of that character. This court holds that the evidence is sufficient to support the verdict on both counts. Defendant's point has no merit.

The judgment is affirmed.

## Case No. 19103

■ Defendant's sole point is that he was entitled to relief on his Rule 29.15 motion, and the trial court erred in ruling otherwise, because defendant was denied his constitutional right to effective assistance of counsel, in that "defense counsel failed to present the testimony of Linda Hyslip and Dana Boley at trial. Hyslip would have testified that C.R. was sick and drunk the night of April 26, 1990. Boley would have testified that C.R. had to be picked up from the bar's parking lot to be put in a car and that, when Boley talked to C.R. the next day on the telephone, C.R. did not sound upset and only wondered where her car was."

Defendant argues: "While defendant presented an alibi defense at trial, defense counsel also focused on the contradictory nature of C.R.'s testimony to attack her credibility. That attack on C.R.'s credibility was crucial to establishing the credibility of defendant's alibi defense. Hyslip's testimony that C.R. was drunk would have contradicted C.R.'s testimony that she was not drunk and corroborated Burton's testimony. Boley's testimony that C.R. had to be picked up from the parking lot to be placed into a car would have contradicted C.R.'s trial testimony that she was not drunk and corroborated Burton's testimony that C.R. had to be carried up the stairs to her apartment and that she was placed in bed, rather than sitting up and having a thirty-minute discussion with Burton and Mullenbrook."

In *State v. Vinson,* 800 S.W.2d 444, 448 (Mo. banc 1990), the court said:

"Appellate review of a denial of post-conviction relief is limited to whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j). The motion court's findings, conclusions and judgment are clearly erroneous only if a review of the entire record leaves the court with a definite and firm impression that a mistake has been made."

In *State v. Shire,* 850 S.W.2d 923, 933 (Mo.App.1993), the court said:

"To prevail on a claim of ineffective assistance of counsel, movant must demonstrate that his trial counsel failed to show the customary skill and diligence that a reasonably competent attorney would provide and that he was prejudiced due to the deficient performance. To demonstrate prejudice, the movant must show that the attorney error changed the outcome of his trial. The movant must also overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.

"Movant had the burden to show that the witnesses could have been located, that they would have testified if called, and that their testimony would have provided a viable defense. The choice of witnesses, however, is a matter of trial strategy and, ordinarily, will not support a claim of ineffective assistance of counsel. The appellate court presumes that counsel's decision not to call a witness is a matter of trial strategy and not a basis for overturning a conviction unless movant clearly establishes otherwise." (Citing authorities.)

At the hearing on his motion, defendant-movant adduced from Linda Hyslip and Dana Boley the following testimony:

Linda Hyslip: "I know defendant. On April 26, 1990, I saw C.R. at the Double Nickel. I didn't know her previously. C.R. was in the bathroom with her head leaning over the commode. She was throwing up and she was drunk. I did not see C.R. at any place other than in the bathroom. I gave a statement to Linda Bollinger, an investigator for defendant's attorney."

Dana Boley: "On the night of April 26, 1990, I saw C.R. in the bathroom at the Double Nickel. C.R. was getting sick. I gave her a glass of water and a cold rag. I felt she shouldn't drive. C.R. gave me her keys and I asked my boyfriend, David Mullenbrook, to take C.R. home. David and Paul drove her home. They picked her up and put her in the car and I saw them leave. I did not see her later that night. Later David came back to the Double Nickel and brought me C.R.'s keys and her car. The next day C.R. called me around noon. She just wanted to confirm that I had her car and I would be bringing it back. She sounded tired. She did not sound overly upset. I took her car to her. She did not say anything to me about having been raped the night before. I gave a statement to defendant's investigator."

The trial court found that defense counsel was not ineffective in failing to call Linda Hyslip and Dana Boley as defense witnesses. With respect to Hyslip, the trial court said: "Hyslip would have given cumulative testimony about the victim being sick and intoxicated. She had given a statement to the investigator for the public defender. The amount of testimony adverse to a rape victim that a defendant should present is something that a trial attorney must carefully consider as an attempt to denigrate her may well cause an unfavorable reaction by the jury. The decision by the trial attorney as to how much of this type of evidence should be presented by the defendant was hers to make, and her failure to call [Hyslip] does not entitle movant to relief."

With respect to Boley, the trial court stated that there was nothing in her testimony which would have helped movant, that Boley was endorsed as a state witness, and that defense counsel could have concluded that because of the work relationship between C.R. and Boley, and Boley's relationship to Mullenbrook, that Boley would be friendly to C.R. The court further found that Boley's testimony would have been cumulative "and the trial attorney could have been unwilling to risk presenting [her]."

The foregoing findings and conclusions of the motion court are not clearly erroneous and, indeed, are fully supported by the record. Movant has failed to show that the decision of defense counsel not to call Hyslip and Boley changed the outcome of the trial. Their testimony would not have provided a viable defense. This court presumes that defense counsel's decision not to call either of the two witnesses was a matter of trial strategy and not a basis for overturning the convictions, and movant has not clearly established otherwise.

The judgment is affirmed.

CROW and GARRISON, JJ., concur.