524 S.W.2d 59 (1975)
STATE of Missouri, Respondent,
v.
Arthur Gene TALBERT, Appellant.
No. 35898.
Missouri Court of Appeals, St. Louis District, Division Two.
May 20, 1975.
*59 John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Paul Allred, Jr., Asst. Circuit Atty., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.
Charles D. Kitchin, Public Defender, John F. Bauer, Asst. Public Defender, St. Louis, for appellant.
CLEMENS, Presiding Judge.
A jury convicted defendant Arthur Talbert of felonious assault by shooting Michael Turner, a fourteen-year-old neighbor. After deliberating four hours the jury returned a guilty verdict, and the trial court sentenced defendant to 15 years' imprisonment. On appeal, the crucial issue is whether there was substantial evidence defendant fired the shot that lodged a bullet in the victim's back.
The State's evidence: Defendant and Michael Turner lived in the same residential neighborhood. Michael had known defendant for years and was a friend of defendant's son. There had never been trouble between them. On the afternoon of June 16, 1973 Michael was walking west toward his home on a sidewalk along the north side of the street. Defendant was also going home, driving east toward Michael at about five miles per hour. As defendant's car passed him, Michael heard defendant say something he did not understand. Michael looked back and "I seen his arm come up with something black." Michael then turned his head away, felt a sting in his back and fell to the ground. A Mr. Perkins, visiting in the neighborhood, heard a shot, not from defendant's car, but from that direction. Perkins went to help Michael as he lay on the sidewalk. Neither Michael nor Mr. Perkins nor several persons nearby saw defendant with a gun or make a "shooting motion."
Police arrived within ten minutes and arrested defendant, who was sitting in the hallway of his home. Defendant was unarmed and "cooperative." A police search of defendant, his car and the scene produced neither weapon nor spent ammunition. The police declined an invitation to extend their search into defendant's home.
Defendant testified he did not speak to Michael Turner or shoot him and had no gun. Two others, defendant's mother and a neighbor, testified they saw defendant drive up to his home and walk in; neither saw defendant with a gun.
At the threshold of this appeal lies defendant's challenge to the sufficiency of the evidence. It must be sufficient for the jury to determine, beyond a reasonable doubt, that defendant did shoot Michael Turner. Here we distinguish between the weight of the evidence and the substantiality of the evidence of defendant's guilt. The weight of the evidence is for the jury if, but only if, this court can first say there was substantial evidence of guilt. As was said in State v. Donnington, 246 Mo. 343, 151 S.W. 975[4] (1912), "we are not unmindful of the settled rule of appellate procedure that it is the province of the jury to weigh the testimony and to determine the facts. Nevertheless, when the question of the sufficiency of the testimony is properly *60 presented, an appellate court cannot escape responsibility by shifting it to the jury." This principle was followed in State v. Madison, 177 S.W. 347 (Mo.1915): "But where, as in this case, the direct proof is meager and not supported by a well-connected chain of circumstances, we are authorized in setting aside the verdict on the ground alone of the insufficiency of the evidence."
This distinction between a jury's weighing the evidence and a court's passing on its substantiality was re-examined in State v. Gregory, 339 Mo. 133, 96 S.W.2d 47[1-6] (1936): ". . . since the test of substantial evidence is whether a jury reasonably could find the issue thereon, the result must depend in some measure upon the degree of persuasion required. In a criminal case liberty and sometimes life are involved, and there cannot be a conviction except upon a finding of guilt beyond a reasonable doubt. Necessarily, therefore, it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence; and in resolving that question the court undoubtedly can pass on the credibility of the testimony to the extent of determining whether it was substantial in the sense above explained. In no other way can the rights of the defendant be protected. It would be an incongruous situation if the court were compelled to let a conviction stand as being supported by evidence warranting a verdict of guilt beyond a reasonable doubt, when for any reason made manifest on the record the court is convinced the evidence reasonably could not support a conviction."
The Gregory court noted that the appellate court must consider "all the circumstances of the case." Our court adhered to that comprehensive principle in Elam v. All-bee, 432 S.W.2d 379[1] (Mo.App.1968), when we said: "In determining the sufficiency of plaintiff's case, he is entitled to all favorable evidence and inferences. A review of the evidence, however, is not limited to isolated statements: it embraces all evidence adduced by plaintiff."
In the light of these principles, we examine fully the evidence the State contends supports its charge defendant shot Michael Turner.
No one but Michael Turner testified to defendant's conduct: Michael said defendant was slowing down as he drove toward him. As the car passed, Michael looked back in response to defendant's voice and saw defendant's "arm come up with something black." He testified defendant's car was then quite close, "about from here to that desk." After Michael looked forward again, he heard and felt a shot. As he fell to the ground and lay on his back Michael saw defendant parking his car nearby, "about from here to that brown chair." Michael then saw defendant get out and walk into his house. This testimony was the only evidence supporting the State's charge that defendant shot Michael. By this account, while bringing his car to a stop defendant would have to have turned around in his car, pointed a gun and fired behind him. Such movement and physical contortion are incompatible with accurate marksmanship. Defendant supposedly did this in broad daylight and in full view of numerous witnesses, none of whom saw the act. We add that there was a total absence of other incriminating evidence: No motive,[1] no gun, no ballistics report to show the type of weapon from which the shot was fired, no evidence of the angle of entry of the bullet or the distance from which it was fired, no paraffin test of defendant to determine whether he had recently fired a gun.
*61 Our examination of the record compels our conclusion the evidence was not "sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence." State v. Gregory; supra, l. c. 52.
The judgment is therefore reversed.
KELLY, J., concurs.
STEWART, J., dissents.
STEWART, Judge (dissenting).
I would sustain the judgment.
Where the sufficiency of the evidence to sustain a conviction is questioned ". . . we accept as true all evidence in the record tending to prove the defendant guilty, whether such evidence is circumstantial or direct in nature, together with all favorable inferences that can reasonably be drawn therefrom. (citations omitted) It is not the function of this court to weigh the evidence; our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged." State v. Johnson, 510 S.W.2d 485, 487 (Mo.App. 1974).
With this criteria in mind the jury could reasonably have found the facts as follows. About 2:00 p. m. on June 16, 1973 Michael Turner, age 14, was walking west on the north sidewalk of Brantner St. From the photographs we ascertain that Brantner St. is a one way three lane street. Defendant, A. G. Talbert was driving east toward Michael at a very slow rate of speed, about 5 m. p. h. in the middle of the street. As he approached Michael he slowed further and as he was passing Michael defendant mumbled something. Michael turned his head toward the automobile and saw the defendant bring up his right arm. Defendant had a black object in his hand.
Though not of great significance there is some indication that Michael saw the defendant stick his hand out of the car with the black object in his hand.[1] As Michael turned his head back toward the west he heard a shot, felt a sting in his back and fell to the ground with a bullet wound of his back. When Michael fell the defendant's car was stopped in the middle of the street, as estimated by counsel, about 10 to 15 ft. from Michael. Defendant looked back at Michael then he drove the car to his mother's house which is about 25 to 50 ft. east of the place where Michael was shot. The entrance to the house is within a few feet of the sidewalk. He then got out of the car and went into his mother's house.
Jerry Perkins was seated on the front steps of a house across the street from where Michael was shot. Mr. Perkins heard a shot. The shot came from the direction of the defendant's car. He saw Michael fall to the sidewalk and ran to Michael who told him, "A. G. shot me."
Michael suffered a gun shot wound of the left side of his back at the thoracic level. The bullet lodged in the upper right quadrant of the abdomen in the superior surface of the liver.
The police responded to the scene and remained with Michael for about 10 minutes then they went to defendant's house and took defendant into custody. Defendant's speech was slurred and there was a strong odor of alcohol on his breath. There were no weapons on defendant at the time *62 he was taken into custody and none were ever located.
Michael did suffer a gun shot wound on the street. The only issue is whether the jury could reasonably find that defendant fired the shot. I feel that from the evidence set out above the jury could conclude beyond a reasonable doubt that defendant shot Michael Turner.
The only point raised by defendant which is pertinent to our discussion is that "The trial court erred in overruling the defendant's motion for a verdict of acquittal and motion for a new trial because the guilty verdict was contrary to the weight of the evidence in that four witnesses directly contradicted the testimony of the victim and there was no direct evidence by any witness that the defendant shot Michael Turner or was in possession of a gun on the day in question."
The testimony of defendant is the only testimony which can be said to be in conflict with that of the victim. The other witnesses merely testified that they did not see defendant with a gun. It does not necessarily follow that he did not have a gun. In any case it was for the jury in the first instance to resolve any conflicts in testimony and to determine the credibility of the witnesses. The trial court may consider the weight of the evidence when ruling on the motion for new trial but it is not a matter for review by an appellate court. State v. Talbert, 454 S.W.2d 1[6] (Mo.1970). Nor is it necessary that an eyewitness actually see the shooting where the circumstances warrant such finding. State v. Styles, 476 S.W.2d 591 (Mo.1972). Michael did see defendant with a black object in his hand. A shot followed immediately afterward. The shot came from the direction of the car. While Michael did not positively identify the object as a gun the jury could reasonably conclude that it was a gun. Irrespective of defendant's degree of marksmanship a bullet did strike Michael. The bullet entered the body at a point which would be exposed to a shot from the car; the left side of the back and it moved down and to the right to lodge just above the liver in the upper right quadrant of the abdomen, an angle indicated by the relative position of the car and the victim.
Defendant testified that he had no gun and that he did not shoot Michael. He also testified that he heard no shot fired. The latter statement could have made him more suspect to a jury because there was a shot fired in close proximity to the defendant. Defendant had sufficient time to dispose of the gun. It is obvious the jury did not believe his testimony. The only other persons who testified on behalf of the defendant were members of his mother's household. They merely testified that they did not see a gun in defendant's possession.
For the reasons set out herein I would affirm the judgment of the trial court.
NOTES
[1] Although motive is not an essential element, "where the defendant denies the act, the question of motive becomes important. Absence of motive in such case tends toward innocence." State v. Stapleton, 518 S.W.2d 292[2] (Mo. banc 1975).
[1] There was no objection to the following in direct examination of Michael:

"Q. How far down did he go, Michael, before he stopped this car from where he was when you saw him stick his hand out the car?
A. About from here to that brown chair to that brown chair right there (indicating)."
Defendant in final argument stated: "Now, Michael says that Arthur stopped and said something to him; he couldn't understand what it was. He stopped the car. He was about from that chair to the chair over there away from him (indicating), ten or fifteen feet. Stopped the car, pointed something out the window."