STATE of Missouri, Respondent,

v.

Clint ROBERSON, Appellant.

No. 28831.

Missouri Court of Appeals,
Kansas City District.

Feb. 28, 1977.

Lillie Knight, Kansas City, for appellant.

John C. Danforth, Atty. Gen., David L. Baylard, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from conviction by a jury of two counts of robbery, first degree, by means of a dangerous and deadly weapon. §§ 560.-120, 560.135, RSMo 1969. Appellant questions whether the evidence is sufficient to prove defendant a perpetrator of the robberies; whether the State was guilty of suppression of material evidence; whether the State's attorney, in cross-examination of defendant, accused him of lying under oath; whether the trial court, by its remarks, was guilty of bias and prejudice as to affect the verdict of the jury. Affirmed.

Appellant contends (I) that there was no substantial evidence of defendant's guilt and the court erred in failing to direct an acquittal "in that the testimony offered by the State was so contradictory * * * that it was wholly insufficient to constitute substantial proof of defendant's guilt beyond a reasonable doubt." Appellant asserts that he was convicted on the testimony of witnesses-victims Caruso and Thompson who identified him at show-up and in court, and by witness-victim Cook who identified him in court, as the one of two men and two women who, on January 23, 1976, put a gun on them and forced Caruso to empty the safe and cash registers at a Milgram's store in Kansas City, Missouri. He argues that if descriptions compiled by police investigators were correct, then defendant could not have been the man who committed the offenses because none of the descriptions fit defendant. He also emphasizes his alibi testimony, failure of other employees and customers to identify him, and evidence which implicated one Calvin Rayford.

The sufficiency of evidence to support a guilty verdict is determined by taking as true all evidence tending to prove guilt, together with all favorable inferences that it can reasonably support, disregarding contrary evidence and inferences. *State v. Graham*, 543 S.W.2d 559[1] (Mo.App.1976); *State v. Reed*, 453 S.W.2d 946, 949 (Mo. 1970); *State v. Talbert*, 524 S.W.2d 58 (Mo. App.1975).

So tested, the evidence would permit a jury reasonably to find: On January 23, 1976, around 8:15 to 8:30 p. m., at Milgram's Food Store, 6421 Truman Road, Kansas City, Jackson County, Missouri, a black man, identified as defendant, pulled a gun on Joseph Caruso, acting manager of the store. Defendant already had accosted John Thompson, another employee. Defendant told Mr. Caruso he wanted to go to the safe in the back of the store and warned that if any alarms sounded or if anything went wrong he would blow off his head. Defendant, Mr. Caruso and Mr. Thompson proceeded to the back room where the safe was located. It was closed and locked and, at gunpoint, Mr. Caruso explained how it could be opened without sounding an alarm. Defendant also warned that he had friends in the front part of the store who would start shooting if anyone came into the store upon hearing an alarm.

At defendant's direction, Mr. Caruso opened the safe, and all three removed the money and put it in a canvas mail sack. All this occurred under good lighting and, although defendant tried to hold his head at an angle away from Mr. Caruso and told Mr. Caruso not to look at him, Mr. Caruso had a good view of defendant's face throughout the robbery.

After the money was taken from the safe, defendant, with Mr. Caruso and Mr. Thompson in tow, proceeded to the front of the store. William Cook, the store's meat cutter, observed them as they came out of the back room with defendant carrying the mail sack. Mr. Cook attempted to go into the back room but was stopped by a second man whom he identified as Calvin Rayford. Rayford directed Mr. Cook to return to the front of the store, threatened him with a gun, and took his watch. Mr. Cook also identified defendant as the robber he saw with Mr. Caruso and Mr. Thompson.

At the front of the store, defendant told Mr. Caruso to unlock all cash registers so that he could take the money from them. Mr. Caruso then noticed another black man and two black women and, as he opened the first cash register, one of the women grabbed the money from it. After the money was taken from the cash register, defendant directed everyone to lie on the floor, after which he and his associates proceeded to the liquor store, robbed it, and fled the scene with $2,500 from the store.

Mr. Caruso and Mr. Thompson attended a line-up on January 28, 1976, and saw no one there connected to the robbery. They attended another line-up February 7, 1976, and identified defendant as the robber who took them to the safe in the back room of the Milgram store during the robbery January 23, 1976.

The foregoing demonstrates a case of armed robbery of $2,500 from employees of Milgram's Food Store and of armed robbery of a watch from William Cook, all as charged against Clint Roberson by the information tried by the jury. § 560.120, RSMo 1969.

■ With respect to the limited question of identity, "Where there is positive identification by a single eyewitness, with explanation as to discrepancies, this constitutes substantial evidence of the guilt of the defendant, and the weight of the evidence is for the jury. This is especially so where the lighting is good and the witness was close to and personally saw the face of the robber * * *." *State v. Bibee*, 496 S.W.2d 305, 316 (Mo.App.1973). See also *State v. Kern*, 447 S.W.2d 571, 574 (Mo.1969); *State v. Stockdale*, 415 S.W.2d 769 (Mo.1967); *State v. Graham*, 527 S.W.2d 936, 947 (Mo.App. 1975), all to the effect the testimony of a single witness is sufficient evidence to establish guilt of the accused.

■ Defendant's identification as a perpetrator of the robberies was made by three eyewitnesses-victims of his crimes. Mr. Caruso conceded he may have misjudged defendant's height, but he remained positive in his identification. He and Mr. Thompson did not remember giving descriptions as contained in the police report, and the officers stated that the descriptions they had were not attributable to either Mr. Caruso or Mr. Thompson, but were "composite" descriptions derived from their interviews of Mr. Caruso, Mr. Thompson, and at least two other witnesses.

■ In these circumstances of sufficient evidence of defendant's guilt, discrepancies and conflicts, if any, in the identification of defendant and the value of defendant's alibi, were properly for the jury to resolve. *State v. Talbert*, supra; *State v. Kellick*, 521 S.W.2d 166 (Mo.App.1975); *State v. Collins*, 520 S.W.2d 155 (Mo.App.1975); *State v. Davis*, 516 S.W.2d 784 (Mo.App. 1974).

■ Appellant charges (II) that "the State suppressed material evidence in failing to produce the picture of the defendant which the prosecutor had shown to Caruso prior to submitting him for deposition."

This charge does not state "what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous" as required by Rule 84.04(d), V.A.M.R., in order to pre-

serve and present any such point for review. *State v. White*, 529 S.W.2d 22, 24 (Mo.App.1975).

The State's cross examination of defendant was calculated to test his alibi and relationship with Calvin Rayford. The following occurred near the end:

"Q. (By Mr. Edwards [for the State]) So you didn't have anything to do with that Milgram's event at all; is that correct, sir?

"A. Correct.

"Q. Would you tell me the truth, Clint Roberson, if it meant that the truth was going to send you to prison?

"MS. KNIGHT [for defendant]: I object to that, Your Honor, as highly improper and inflammatory question. This witness is under oath, and is telling the truth.

"THE COURT: Objection is overruled.

"A. I am under oath and I would tell the truth."

Appellant contends (III) that the court erred in overruling the foregoing objection asserting that the question permitted the State "to accuse the defendant of lying under oath," and that the court's ruling "necessarily conveyed the impression to the jury that the court believed the defendant guilty and that he was lying in order to save himself from prison."

■ There is no question that reversible error occurs where a prosecutor is permitted by his questions to denigrate the character of defendant or refer to him as a criminal. See, e. g., *State v. Heinrich*, 492 S.W.2d 109 (Mo.App.1973); *State v. Spencer*, 472 S.W.2d 404 (Mo.1971); *State v. Taylor*, 320 Mo. 417, 8 S.W.2d 29 (1928); *State v. Moran*, 99 Conn. 115, 121 A. 277, 36 A.L.R. 862 (1923). However, the incident said to constitute reversible error in this case is not of the same substance as those proscribed in the foregoing cases.

■ The scope, extent, and control of cross-examination are matters within the discretion of the trial court, *State v. Brewer*, 286 S.W.2d 782, 784 (Mo.1956); and, absent an abuse of discretion resulting in prejudice to the accused, the court's rul-

ing is upheld, *State v. Moser*, 423 S.W.2d 804, 807 (Mo.1968); *State v. Neal*, 526 S.W.2d 898 (Mo.App.1975). Bias and prejudice of a witness and his interest in the outcome of litigation are always proper subjects of cross-examination; and a defendant who testifies in his own behalf "may be contradicted and impeached as any other witness in the case," Section 546.260, RSMo 1969; *State v. Reece*, 324 S.W.2d 656, 660 (Mo.1959).

■ The question put to defendant Roberson went to his interest in the outcome of the litigation, a proper subject of cross-examination, as opposed to an improper personal reference. Its intent and effect, if any, were turned against the prosecution when the defendant answered to his self-service, "I am under oath and I would tell the truth," exactly as stated by defense counsel.

■ Appellant contends (IV) that the verdict was the result of bias and prejudice of the court, "manifested in improper remarks by the court, impatience and criticism of defendant's counsel, and the court's attempt to restrict said cross-examination by suggesting to the prosecutor that he make objections to the cross-examination."

The difficulty with this contention is that there is no record showing how the jury was influenced by the court's remarks, or by colloquy between counsel, prosecuting attorney, and the court. Appellant gives four transcript references under his charge; however, all the referenced incidents took place outside the presence or hearing of the jury. Cf. *State v. Embry*, 530 S.W.2d 401 (Mo.App.1975), where it was reversible error for the court to sustain objections that had not been made and otherwise took over or interfered with defendant's cross-examination.

Judgment affirmed.

All concur.