**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Samuel LONGMEYER,
Defendant-Appellant.**

**No. 38792.**

Missouri Court of Appeals,
St. Louis District,
Division One.

May 9, 1978.

---

Huck & Kasten, Inc., St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

PER CURIAM.

This is an appeal from a judgment of conviction entered by the Circuit Court of the City of St. Louis whereby the defendant-appellant, Samuel Longmeyer, was sentenced under the provisions of the Second Offender Act to ten years in the Department of Corrections for the offense of assault with intent to kill with malice. §§ 559.180, 556.280, RSMo. He appeals. We affirm.

On appeal the appellant emphasizes alleged inconsistencies in the state's case and the improbability that the appellant was the perpetrator of the offense and thereby challenges the sufficiency of the "credible" evidence to make a submissible case.

The state's evidence consisted of the testimony of Mr. Frank Mills, the victim, the arresting and investigating officers and the hospital records of the victim. The defense consisted of the testimony of the defendant, who denied the assault, and the defendant's mother, wife of the victim. Certain physical evidence was also introduced by the state.

The jury could reasonably find the following. The victim, Mr. Frank Mills, testified that on the afternoon of December 1, 1973, he returned home from his place of employment. Mr. Longmeyer was there when he arrived. After a few "words" concerning Longmeyer's mother and brother-in-law, Mr. Mills requested that Longmeyer leave the house. Not long afterwards the defendant returned to the house —"He entered the back door. He kicked it down." At that time Mills was in the middle room of the three-room residence sitting on the bed. When Longmeyer "kicked in the back door and entered," he had a "shotgun" in his hands. He took two or three steps into the house and "then fired the shotgun." He fired one shot. The pellets hit Mills in the eye. Mills retaliated and "reached over in the corner and got my rifle and fired." The rifle was in the corner "sitting right by the bed." Mills "fired a shot out of the rifle." "I pointed—he is going out this way (indicating) and I fired like this (indicating) but see, I don't know which way I pointed it but—because that blood was coming out." Mills indicated that Longmeyer "took the shotgun with him" when he left. As a result of the injuries, Mr. Mills has a glass eye.

On cross-examination Mr. Mills testified that no "argument" occurred between him and Longmeyer, but did admit that there were words or an "argument" "about his mother messing around with her son-in-law and he [son-in-law] knocked her down and he [Longmeyer] wanted me to take it up and I [Mills] said I didn't have nothing to do with it." He also testified that there was an "argument" and he kicked a knife out of Longmeyer's hand. Also, on cross-examination Mills testified that he didn't know whether his rifle was loaded, but said, "I

had to load the gun." "They [the bullets] was right up on the shelf and I reached and I loaded that in five minutes, or in less than five minutes." He also admitted that he had two other rifles in the house but denied having any handguns. "I don't have nothing but them three rifles." Also, on cross-examination Mills said, " . . . well, listen, I'll tell you like it was. Now, he took two steps from the door and got inside the door good and then he shot me and then he broke and run out." The police were called and Mr. Mills was taken to the hospital. When the police arrived, Mills was bleeding and blood was on the floor and bed. An investigation was made and a police evidence technician traced a bullet that had pierced the wall separating the kitchen. Police also recovered shotgun pellets embedded in the front door. A live shotgun shell was recovered from the back porch. "Shotgun wadding" was found in the bedroom. Hospital records indicated that Mills was admitted that day with a diagnosis of shotgun blast to the face and right shoulder and was discharged the next day with a further complication of a globular rupture of the right eye.

Some months later the appellant was arrested for the offense.

At trial Longmeyer testified in his own defense. He admitted that he went to the Mills' residence to "talk to my mother." He admitted having an argument with Mills and Mills started "kicking." Longmeyer was kicked in the stomach. He said he left about 4:20 p. m. He denied returning to Mills' home or returning with a shotgun. He denied firing a shotgun at Mr. Mills. He testified that he was chased out of the house and out the back door. He went to a friend's house to watch a ballgame. He also testified that Mills had "hand guns" and "shot guns" in the house. He admitted having a little pen knife in his pocket and pulled it out after Mills advanced.

Mrs. Marie Longmeyer Mills, defendant's mother, testified on defendant's behalf. The thrust of Mrs. Mills' testimony was that when Mr. Mills came home her son was

there. They had an argument and Mills "started kicking." She told Longmeyer to leave and Mills chased Longmeyer out the door, "on out around the yard." She saw Mills "getting his guns loaded, putting them on the bed." She saw Longmeyer get into his car and leave. She testified that Mills "always had a whole lot of long guns" and "hand guns." While Mrs. Mills was sitting in a chair in the house, she saw Mills "shooting and all the doors was standing open and I saw him shooting." She did not see the person who shot at Mills but did see Mills "bleeding."

Two young men were at the house, but they did not testify at trial.

At the close of the evidence the defendant moved for a judgment of acquittal which was overruled.

Appellant's sole point on appeal is that the court erred in submitting the case to the jury "because the state failed to adduce sufficient credible evidence that the defendant was the perpetrator of the crime."

The appellant seizes upon certain inconsistencies in the victim's testimony, inconsistencies between the victim's testimony and defense witnesses, the improbability of the events of the shooting and the lack of credibility of the victim's testimony. Because of these, appellant contends that there was insufficient evidence to make a submissible case. Appellant points out (1) that Mr. Mills first stated that there was no argument but then admitted an argument and that he kicked a knife out of Longmeyer's hand; and (2) that the rifle he fired was loaded before he shot but then stated that he had to load the rifle and that he did so in five minutes or less. Appellant also complains (1) that the sequence of events as testified makes it improbable for the appellant to have remained standing the kitchen while Mills loaded the gun in five minutes or less and then fired at appellant; (2) that such testimony makes it improbable to show that appellant was the one who shot the victim; and (3) that such testimony is unbelievable. Appellant also seizes upon the discrepancies in the victim's testimony that he had no handguns when Mrs. Mills testi-

fied that he did. Appellant points out that a shotgun was never located and that no paraffin tests were made of him and no fingerprints were found.

Therefore, because of these discrepancies and the improbability of the state's evidence, appellant contends that there was insufficient evidence to submit the cause to the jury.

We disagree and hold that appellant's point is without merit.

 There are certain fundamental principles governing the contention raised. In determining whether there is sufficient evidence to support a criminal conviction, the appellate court considers as true the evidence most favorable to the state and all the favorable inferences reasonably to be drawn therefrom. Evidence and inferences to the contrary are disregarded. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence is sufficiently substantial to make a submissible case. *State v. Gamache*, 519 S.W.2d 34, 39 (Mo.App. 1975); *State v. Cain*, 507 S.W.2d 437, 440–441 (Mo.App.1974). Review of the evidence is limited to a determination of whether substantial evidence supports the verdict. *State v. Wilson*, 544 S.W.2d 859, 864 (Mo. App.1976). Substantial evidence means evidence from which the trier of facts reasonably could find the issue in harmony therewith. *See State v. Taylor*, 445 S.W.2d 282, 284 (Mo.1969). It is not our function to weigh the evidence, but it is our duty to pass upon the sufficiency of the evidence. Our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Johnson*, 510 S.W.2d 485, 487 (Mo.App. 1974). A defendant is not entitled to a judgment of acquittal because of discrepancies or conflicts in the testimony of the state's witnesses. *State v. Cox*, 478 S.W.2d 339, 341 (Mo.1972). Conflicts in the evidence, the determination of the credibility of the witnesses and the weight to be given their testimony are within the peculiar province of the jury. *State v. Kellick*, 521

S.W.2d 166, 167 (Mo.App.1975). The fact that a witness' testimony may to some extent be contradictory does not prevent its constituting substantial evidence. Inconsistencies in testimony are questions for jury resolution. *State v. Hodges,* 537 S.W.2d 886, 887 (Mo.App.1976); *State v. Collett,* 526 S.W.2d 920, 925 (Mo.App.1975). The testimony of a single witness may be considered sufficient although the testimony may be inconsistent. *State v. Platt,* 496 S.W.2d 878, 880–881 (Mo.App.1973). The principle that uncorroborated testimony of a victim of a sexual assault is insufficient to support a conviction where the testimony is inconsistent is not applicable to these proceedings. *Platt,* 496 S.W.2d at 880; *Cf. State v. Donnington,* 246 Mo. 343, 151 S.W. 975, 979 (1912). To find reversible error here so as to reverse the overruling of the motion for judgment of acquittal, we would have to conclude as a matter of law that the evidence was not sufficient to sustain a judgment of conviction. *State v. Thompkins,* 515 S.W.2d 808, 812 (Mo.App.1974).

■ This we cannot do. Here there was definite evidence by Mr. Mills that the defendant returned to his home, kicked the door in, took two or three steps and shot Mr. Mills with a shotgun. This testimony of the victim is sufficient to submit the case to the jury. The credibility of the witness and the weight of the testimony are for the jury to determine. *State v. Williams,* 376 S.W.2d 133, 136 (Mo.1964).

The inconsistencies in the testimony—those relating to whether there was an argument, where and when Mills' rifle was loaded, whether Mills had handguns in his home and the improbability of the defendant standing and observing the events while Mills loaded the rifle—are all matters for the jury to determine. *State v. Spraggins,* 368 S.W.2d 407, 410–411 (Mo.1963); *State v. Washington,* 383 S.W.2d 518, 522 (Mo.1964); *Platt,* 496 S.W.2d at 881; *State v. Berry,* 526 S.W.2d 92, 95 (Mo.App.1975); *State v. Pinkus,* 550 S.W.2d 829, 838 (Mo. App.1977). None of these inconsistencies or alleged improbability goes to the vital and material issue that the defendant, as Mr.

Mills testified, broke into his residence and shot him. *See State v. Parker,* 324 S.W.2d 717, 722 (Mo.1959).

Appellant relies for reversal on our recent 2–1 divisional opinion of *State v. Talbert,* 524 S.W.2d 58 (Mo.App.1975). That decision is not dispositive of the cause here. There the victim did not see the defendant shoot; a witness heard a shot but not from the defendant's car; no one saw the defendant with a gun or saw him make a shooting motion; there was no evidence as to who really shot the victim. Furthermore, the physical contortion was incompatible with accurate marksmanship. *Talbert* is clearly distinguishable from the facts here and is not controlling.

We hold that under all the circumstances there was sufficient substantial evidence to make a submissible case and that the trial court did not err in overruling the appellant's motion for judgment of acquittal.

The judgment is affirmed.

All the Judges concur.